THE GEORGIA RAILROAD vs. THOMAS.

1. The charge of the court is full and fair, and presents every theory of the plaintiff and defendant fully and fairly; and this court is satisfied that justice has been done the parties.
2. Where the court has fully and fairly submitted in his charge to the jury the law applicable to the whole case, he is not bound to give any further charge, however proper or legal.
(a.) Besides, some of the requests to charge do not appear to be proper.
3. Although one part of a charge, when taken alone, may be inaccurate or seem to intimate an opinion on the evidence, yet, if the whole charge, taken together, lays down the law correctly, and is sufficiently clear to be understood by jurors of ordinary capacity and understanding, it is sufficient; and a reversal will not be granted.
(a.) Although the charge at one point contained the expression "as shown from the evidence," yet considered in connection with its context, it was not calculated to mislead the jury, but was equivalent to saying, if the evidence shows the facts to be so.
January 6, 1885.

Charge of Court. Practice in Supreme Court. Railroads. Damages. Negligence. Before Judge POTTLE. Hancock Superior Court. October Adjourned Term, 1883.

Thomas brought his action against the Georgia Railroad for $10,000.00, for a personal injury. The case was tried, a verdict rendered for plaintiff for $1,000.00, a new trial refused, and a reversal granted by the Supreme Court (see 68 Ga., 744). On the last trial, the evidence for the plaintiff was, in brief, as follows: Plaintiff was a doctor, living near the town of Sparta, and near a public crossing over defendant's road. On the morning of the injury, he waited until the regular passenger train had passed, and then mounted his horse and started out on his professional business. When within about sixty or seventy yards of the crossing, he saw a construction train of defendant. It was about three hundred or three hundred and fifty yards from the crossing, and running not more than four or five miles an hour. He did not see it before, on account of

obstructions. He rode along leisurely and passed over the crossing. The train increased its speed rapidly, as it approached the crossing, and when within from fifty to seventy-five yards of the crossing, the whistle began to blow, and continued to do so until the engine was forty to fifty yards beyond the crossing. Several witnesses living in the neighborhood testified that the blowing was the longest and loudest they had ever heard, and was unusual in its character. At this time, the plaintiff had reached a point about thirty yards beyond the crossing. His horse became frightened at the whistling, ran away and threw him, and he was seriously injured. He testified that the skin was torn from his hand and thrown back like a glove; that the tendons and nerves were lacerated, and one or two ribs broken; that he suffered and continued to suffer, at the time of the trial, nearly four years after the injury, from its effects; that he did not rest well at night, was threatened with congestion, could not walk except with difficulty, and could not pursue his profession; that prior to being injured, he could attend to a local practice, extending over five or six miles, was never very robust, but had moderate health and strength. At the time of the injury, he was sixty-three years of age; at the time of the last trial, sixty-seven. The horse was a safe saddle horse. On one prior occasion, while plowing, the train ran within a few feet of him, and he ran away. Plaintiff testified that he had seen him toss his head and run and play in the pasture frequently, when trains would pass, but also had seen the train pass within thirty steps of him, and he did not move.

There were no "blow-posts" at the time of the accident; some have been put there since. It was shown that the accident occurred on the track of the Macon and Augusta Railroad, which was leased and controlled by the defendant, and the train was run by its agents.

The evidence for the defendant was, in brief, as follows: The character of the sound depends on the construction

of the whistle. The engineer testified. that the whistle was blown as a danger signal for something, he did not remember what, but not wantonly or recklessly to scare plaintiff's horse. Another witness testified that he was riding a mule, and was about forty or fifty yards behind plaintiff; that he saw the train when it was. about two hundred and fifty yards from the crossing, and was running twenty-five or thirty miles an hour; that he stopped his mule and was not injured; that the whistle began to blow at about one hundred or one hundred and twenty yards from the crossing.

The jury found for the plaintiff $5,000.00. Defendant moved for a new trial on the following,. among other grounds:

(1) to (6). Because the verdict was contrary to law, evidence and the charge of the court, and the damages were excessive.

(7.) Because the court erred in charging the jury, "The Macon and Augusta Railroad is a chartered corporation, and is allowed to run its cars or use its machinery on their track in any way it chooses, provided the rights of others are not injured or impaired. They. have the exclusive use of their track except at crossings; the public have a right to use such crossings as business or pleasure may require. If you believe that Dr. Thomas crossed the road ahead of the train, under circumstances which would induce a prudent man to attempt the crossing, and without any fault on his part, and after he had crossed, the whistle blew and continued to blow, when no necessity existed, as shown from the evidence, and caused the fright of the horse which caused the fall, the defendant is liable. In determining what was due care on the part of the plaintiff, you may consider whether the train was a regular one, running on a known schedule, or whether it was an irregular train." [The court charged also as follows: " There is no restriction upon railroad companies as to blowing the whistle of the engine, except as I have read you, in approaching

crossings. Their agents are allowed to blow the whistle as often as the necessities of each case may require, to be determined by the engineer; of course, due regard is to be paid to the safety and rights of the public. . . . . No court can tell you what the evidence is, and what value you shall attach to it. Take this case, and find such a verdict as is required by the law and the evidence. . . . . If you believe from the evidence in this case that the injury to Dr. Thomas was caused by the blowing of the whistle of the locomotive after it passed the crossing, and you further find from the evidence that the whistle was blown after the locomotive passed the crossing, not carelessly or recklessly, but for the purpose of removing obstructions from the track, or other lawful purpose as a signal of danger, the plaintiff cannot recover, no matter if such blowing caused the plaintiff's horse to run away; but it must appear from the evidence that such obstructions were on the track, or other lawful reasons existed."]

(8.) Because the court refused to charge as follows: " If you believe from the evidence that the blowing of the whistle of the engine, within the four hundred yards before the train reached the crossing, caused plaintiff's horse to run away, throwing him and injuring him, plaintiff is not entitled to recover in this case, for proper diligence under the law required the whistle to be blown continuously over that part of the road; and as the railroad company was only doing what was required of them by the law, they are not responsible for any injury to plaintiff resulting therefrom. The law requiring a railroad company to blow the whistle of its engines within four hundred yards of a public crossing, such blowing is only proper diligence on the part of such railroad company, and it is not responsible, under the law, for any injury resulting therefrom. As a matter of law, I further charge you that proper diligence required the railroad company to blow the whistle of the engine within the 400 yards before it reached the crossing, and it is not liable to Dr. Thomas in

v 73-24

this case, if you find from the evidence that it was this blowing that scared his horse and caused the injury."

Also because the court struck the clause in brackets from the following charge, before giving it: "If you find from the evidence that the conduct of Dr. Thomas, at the time of the accident and just before, in meeting an approaching train [riding a horse that was known to be afraid of the cars, and on a saddle that was insecure], was not that of a prudent man, and that he did not exercise ordinary care, as defined, then I charge you, he cannot recover in this case, and you should find for the defendant.

The motion was overruled, and defendant excepted.

W. M. & M. P. REESE; HARRISON & PEEPLES; SEABORN REESE, for plaintiff in error.

LOUIS W. THOMAS; J. H. LUMPKIN; F. L. LITTLE; JAMES A. HARLEY, for defendant.

BLANDFORD, Justice.

Thomas brought his action against the Georgia Railroad to recover damages which he alleged he had received by reason of the negligent conduct of defendant's agent.

On the trial of the case, it was shown that Thomas was a physician, and that he lived out of the town of Sparta, in Hancock county; that he had waited until the passenger train had passed before he attempted to cross the railroad, which he had to pass before he could go to his office in Sparta; that he was on his horse and had started to his place of business, and when near the railroad, he discovered a train approaching the crossing very slowly (this was a construction train); it was several hundred yards off; he rode across the crossing, when the train increased its speed, and commenced blowing its whistle furiously, loud and long, until it had passed the crossing for some time; that in consequence of the noise, the plaintiff's horse became frightened and ran away, thereby seriously hurting, injuring and dam-

aging the plaintiff. The persons in the vicinage testified that they had never heard such loud blowing before. The engineer testified that it was a danger signal; that there was some obstruction on the road, but what it was he could not say. The jury, under the evidence and charge of the court, found for the plaintiff five thousand dollars for his damages. The defendant moved the court for a new trial, which the court overruled, and this is excepted to, and forms the ground of complaint.

We have looked through this record, and are satisfied that justice has been done the parties in this case. The charge of the court is full and fair, and presents every theory of the plaintiff and defendant fully and fairly. The requests by plaintiff in error to the court to charge the jury, which were refused by the court, were properly refused, because the court had, in his general charge, given the same substantially in charge to the jury. Where the court has fully and fairly, in its charge to the jury, submitted the law, as applicable to the whole case, the court is not bound to give any further charges, however proper or legal they may be. There is a point at which the court may stop, and this point is when the whole law applicable to the case has been submitted by the court to the consideration of the jury; besides, some of the requests do not appear to us to be proper.

There is one part of the charge of the court complained of which needs more particular attention; it is this: "If you believe that Dr. Thomas crossed the road ahead of the train, under circumstances which would induce a prudent man to attempt the crossing, and without any fault on his part, and after he had crossed, the whistle blew, and continued to blow when no necessity existed, as shown from the evidence, and caused the fright of the horse, which caused the fall, the defendant is liable." The words "as shown from the evidence" are insisted upon by plaintiff in error as an expression of opinion by the court as to what had been proved. We do not think so, when the charge of the court

is considered; he was particular to instruct the jury that the evidence was alone for their consideration, and with which he had nothing to do.; nor do we think that this charge was calculated to mislead the jury, but we think that the jury understood this part of the charge as the court intended they should; that is, by the use of the words "as shown from the evidence," he intended, and so the jury understood the words to mean, if the evidence shows the facts to be so.. But, admitting the language to be inaccurate, where the whole charge lays down the law correctly, this inaccuracy will be treated as immaterial, the correction having virtually been made by the spirit of the instructions given to the jury by the court. 62 *Ga.*, 65, 72.

If the charge is sufficiently clear as to be understood by jurors of ordinary capacity and understanding, this is all that is required, and such appears to us to be the case as to the charge of the court in this case. 59 *Ga.*, 246, 248; 66 *Id.*, 246, 465; 60 *Id.*, 264; 70 *Id.*, 13; 65 *Id.*, 332; 10 *Id.*, 61. Upon the whole, there is no material error in the several rulings and decisions complained of which requires the judgment of the court below to be reversed.

Let the judgment be affirmed.