## HILL *v.* ROME STREET RAILROAD COMPANY.

1. One of the plaintiff's most material contentions being that a horse attached to a vehicle in which she was riding became frightened on account of unusual and unnecessary noises alleged to have been made by the defendant's car, and it being, under all the evidence submitted, a question for the jury whether the defendant was or was not in this respect negligent, it was error to charge that there was no evidence authorizing a finding that the defendant was responsible for the fright of the horse, and that if the animal was in fact frightened by the car, the defendant was not liable therefor, nor for injuries resulting therefrom, unless guilty of some negligence after the horse became frightened.
2. A city ordinance which by its terms manifestly relates exclusively to railroads upon which cars are moved by locomotives propelled by steam, and which regulates the "running speed of trains and engines" within the city limits, has no application to an electric street-railroad, and therefore is irrelevant in a trial of an action against the latter.
3. Except as indicated in the first headnote, there was no material error at the trial.

Argued April 14, — Decided May 6, 1897.

Action for damages. Before Judge Harris. City court of Floyd county. June term, 1896.

*Rowell & Rowell*, for plaintiff.

*Dorsey, Brewster & Howell* and *Hugh M. Dorsey*, for defendant.

LUMPKIN, P. J. The plaintiff in her petition alleged, that while being driven in a cart along a public highway running parallel with the defendant company's railway-track, an "elec-

tric car came dashing along suddenly at a high rate of speed, at some 15 or 20 miles an hour, making a great and unusual noise, which, together with such unusual speed, so frightened the horse attached to the vehicle " in which she was riding " as to cause the horse to run away," and that in consequence she was thrown upon the track in front of the moving car and seriously injured. On the trial she testified, that the horse was frightened by the car coming up behind him; that "the car was making a loud squeaking noise," she did not "know exactly what kind of a noise it was"; she was "accustomed to hearing street-cars," and the noise she heard "was not the usual noise that an ordinary street-car makes," but "was louder than the regular noise — a kind of squealing, whistling noise." She also introduced as a witness in her behalf the person who was driving the horse on the occasion in question, who testified as follows : " As the car approached, the first thing that attracted my attention was the noise of the car and the horse getting frightened. The noise was a loud rattling noise ; the cogs were not working right, or something like that. I am accustomed to hearing street-cars ; I know the noise they generally make. The usual noise that a car makes, when it is in good shape, is a roaring noise, and not very much of a noise. This was an unusual noise ; it seemed that something was loose ; the car was making a great deal more fuss than common." Another witness for the plaintiff testified : " The noise of the car seemed to be something like a rattling that was unusual, in some way; it made a peculiar sound to what it usually does ; I don't know that it was louder ;  .  .  I don't know that I ever had noticed that peculiar noise on the car before. I do not know anything about its being in the shop for repairs ;  .  .  the car was in the shop the next day, the next day after this injury ; I saw it there ; do not know what it was there for."

As a witness in behalf of the railway company, its motorman testified : " This car had been taken down ; the motor had been burned out, and had put in a new motor in it. The cause of that loud unusual rattling noise was, we put a new motor in it, and the shaft that goes through the armature. There is a pinion about that size ; the pinion works in the car-wheel — in the

axle of the car-wheel; and the car hadn't worked with the new motor, and the teeth in the pinion and the motor hadn't ever been worked together before, and they were making a pretty good racket. It made a pretty good fuss; more than if the pinion and the car-wheel had been put in at the same time; the car-wheel was worn more than the pinion. We had the car out on a trial trip. . . We had put a new armature in. That produces in the operation of the cars a little different noise from that when it has been running some. The armature came home with a new pinion in it This results every time you put a new armature in, unless you change the car-wheel on the axle. If you put in a new axle and a new pinion, it will wear the same as an old one, barring an hour or two when you are first wearing the rough off." The conductor testified: " The car was in good working order. The pinion in the car was worn a little; caused that loud, unusual noise."

In this connection, the trial judge instructed the jury as follows: " I further charge you there is no evidence in this case which will authorize you to find that the defendant is liable for the plaintiff's horse becoming frightened. Therefore, if you believe the horse became frightened at the car of the defendant, I charge you, on the evidence of this case, the defendant would not be liable for the horse's becoming frightened, or any injuries resulting therefrom, unless the evidence should establish to your satisfaction that the defendant was guilty of some negligence after the horse became frightened."

1. Obviously the main contention relied on by the plaintiff for a recovery was, that the defendant was guilty of negligence in using upon its road a car which in running produced great, unusual and unnecessary noises, calculated to frighten horses and cause them to run away. This contention, if borne out by the evidence offered in its support, would have authorized a recovery of damages. *Georgia Railroad* v. *Thomas*, 73 *Ga.* 350, 354–6. " While a railroad company has the right to make all the noises incident to the movement and working of its engines, . . and while it will not be liable for injuries occasioned by horses driven upon the highway taking fright at such noises, if it exercised the right in a lawful and reasonable man-

ner, yet, when approaching or running alongside public streets or thoroughfares, it is the duty of the company to so operate its cars as not unnecessarily to interfere with the rights of individuals traveling such streets or thoroughfares by other modes of travel, or to endanger such travel by unnecessary noises, frightening horses." *Georgia Railroad* v. *Carr*, Ibid. 557–8. The evidence introduced by the plaintiff in the present case showed beyond question that a loud, unusual, and apparently unnecessary noise was produced by the running of the company's car. The defendant was therefore called upon to satisfactorily explain why such an unusual noise was being made, and to show that the same was necessarily incident to a proper and lawful exercise of its franchise. The evidence introduced by the company might well have been regarded by the jury as sufficient for this purpose; but taking into consideration all the evidence bearing upon this issue on both sides, it can not as matter of law be said, either that the company did or did not succeed in establishing its vindication in this regard. We think this was a matter with which the jury should have been allowed to deal; and, accordingly, we hold that the court erred in cutting them off from all consideration of the question whether or not the fright of the horse was occasioned by negligence on the part of the defendant, this being undoubtedly the effect of the charge above quoted.

We do not wish to be understood as holding that a railway company will be legally responsible for producing noises which are merely *unusual*, or greater than is customary in the running of its cars. The company may not have been making any more noise than it had a legal right to make. " It is only where the company's servants make unusual *and unnecessary* noises in the running of their trains, and where no necessity for the making of such noises is made to appear, that it is liable for injuries done in consequence of such needless and unusual noises. " *Morgan* v. *Central Railroad*, 77 *Ga.* 793. Nor do we mean to intimate that there can be any question as to the right of a railway company to repair its cars when necessary or for any reason desirable, substituting new parts for those which have become worn and unserviceable. If such re-

pairs are made in a proper and skillful manner, the company will not be legally responsible, even though the new machinery employed may, for a time, produce a different degree or a different character of noise than that made by the machinery which was thus replaced. The necessity, however, for creating an apparently needless disturbance of the public quietude, whereby life, limb or property is put in peril, must, when injury results, be shown; and ordinarily a jury should determine whether or not such necessity existed.

2. The plaintiff tendered in evidence an ordinance of the mayor and council of the city of Rome, regulating the "running speed of trains and engines" within the city limits, which, among other things, provided that "they shall not blockade these streets or crossings for more than two minutes at one time," and subjected "the person in charge of such train and the superintendent and president of the company" to fine in case of a violation of any of the provisions of the ordinance. Evidently this ordinance was intended to operate only as to railroads upon which cars are moved by locomotives propelled by steam, and has no application to a street-railway over which cars are run by electricity. There was no error in rejecting it.

3. It is unnecessary to deal specifically with each of the various grounds of the motion for a new trial. Except as pointed out in the first division of this opinion, no material error was committed at the trial.

*Judgment reversed. All the Justices concurring.*