CHARLES W. KNIGHT, Respondent, *v.* JAMES F. D. LANIER, Appellant.

*Meeting of an automobile with a horse and wagon on a private lane — duty of the driver of the automobile, seeing that the horse was frightened, to stop.*

In an action to recover damages for personal injuries, the evidence tended to show that the plaintiff was driving a horse and surrey along a private lane when an automobile, operated by the defendant, approached from the opposite direction; that when the automobile was 100 or more yards distant, the plaintiff's horse became frightened and that, after the plaintiff had shouted, the defendant stopped the automobile; that the plaintiff got out and took his horse by the head and that, while the horse was still frightened, snorting, prancing and plunging, the defendant started up the automobile and attempted

to pass the surrey, causing the horse to break from the plaintiff's hold and to throw him down, which resulted in his being severely bruised.

The plaintiff was using the lane, which was tacitly open to the public use, merely as a short cut between two highways to his home, while the defendant was returning from visiting a house to which the lane furnished the only means of access.

*Held,* that, assuming that the defendant was lawfully entitled to use the lane and that the plaintiff was at most a mere licensee, the defendant owed the plaintiff a duty to refrain from carelessly or heedlessly injuring him;

That the question whether the defendant's conduct was characterized by ordinary care was one of fact, and that the evidence was sufficient to sustain a verdict in favor of the plaintiff.

APPEAL by the defendant, James F. D. Lanier, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Nassau on the 29th day of March, 1901, upon the verdict of a jury for $200, and also from an order entered in said clerk's office on the 3d day of April, 1901, denying the defendant's motion for a new trial made upon the minutes.

*Frederick Hulse* [*Ernest F. Eidlitz* with him on the brief], for the appellant.

*George B. Stoddart,* for the respondent.

HIRSCHBERG, J.:

The plaintiff has recovered a small judgment on the theory of negligence, and the question presented on the appeal is whether, at the time of the occurrence complained of, the defendant owed him the duty of exercising care.

The accident occurred on Sunday, May 27, 1900, in the daytime, on a private lane belonging to Mr. Whitney, at Wheatly Hills, in Nassau county. The lane appears to connect public highways and to be tacitly open to public use. The plaintiff was driving a horse and surrey, and was accompanied by his daughter and two other ladies. He was engaged at the time as landscape gardener for Mr. Foxhall Keene, and was on his way from the latter's place to his own home at Glen Cove, and was using the lane as a shorter route, in accordance with his daily habit during the two years of his employment. The defendant was operating an automobile or motor carriage on the lane in an opposite direction from the plaintiff.

He had been visiting the Stevens place, to which the lane furnished the only access, and was returning accompanied by a lady.

When the automobile was within one hundred or more yards the horse became frightened, and, before the two vehicles met, the defendant stopped the machine. The plaintiff says that he shouted to the defendant to stop, and in this he is corroborated by his companions. The defendant says he did not hear the shout, but he did see that the horse was frightened and that he stopped in order to give the plaintiff an opportunity to get out and hold his horse, or do what he might choose. The plaintiff did get out and took his horse by the head, whereupon, as he claims, the defendant, while the horse was still frightened, snorting, prancing and plunging, started up the machine and attempted to pass, causing the horse to break from the plaintiff's hold, to overturn and throw out the occupants of the surrey, and to throw the plaintiff down and to inflict the injuries of which he complains.

The negligence of the defendant, if any, must obviously be predicated upon the act of starting the machine again when the plaintiff was in plain peril. He says, and his companion corroborates him, that the plaintiff beckoned him to do so. The plaintiff and his witnesses assert that no such sign was given, and that nothing was said except that at the time the horse became fractious the plaintiff shouted: "For God's sake stop that machine and let us get out before you kill us all." He further testified that immediately after the accident the defendant said: "I am awful sorry; I ought not to have started up." This the defendant did not deny, except as his story may in itself involve a denial. Under the circumstances the question of negligence, assuming that care was due, was one of fact, and it cannot be said that the conclusion reached by the jury is without support.

But the defendant claims that he owed the plaintiff no duty which was violated, inasmuch as he was a guest or visitor of one lawfully entitled to use the lane, while the plaintiff was at most a mere licensee. The learned trial justice charged the jury that each party had a right to be in the lane, and no exception was taken. Assuming, however, the correctness of the defendant's premises, the conclusion that no duty of care would follow is not correct. The rule applicable is indicated in the cases cited on his behalf, and

would seem to extend the liability for affirmative negligence, such as that charged against the defendant, even to the owner of the property had he been in the defendant's place. Thus in *Larmore v. Crown Point Iron Co.* (101 N. Y. 391, 395) it was said : " The duty of keeping premises in a safe condition, even as against a mere licensee, may also arise where affirmative negligence in the management of the property or business of the owner would be likely to subject persons exercising the privilege theretofore permitted and enjoyed to great danger. The case of running a locomotive without warning over a path across the railroad which had been generally used by the public without objection furnishes an example. (*Barry v. N. Y. C. & H. R. R. R. Co.*, 92 N. Y. 289. See, also, *Beck v. Carter*, 68 id. 283.) "

The rule is, perhaps, more explicitly stated in *Walsh v. F. R. R. Co.* (145 N. Y. 301), at page 305, viz.: " The plaintiff was not on the land by invitation of the defendant nor in its business, but for his own purposes, totally disconnected with the defendant's business. He was not a trespasser in the sense of his being unlawfully upon the premises, because the defendant, by its course of conduct, had impliedly granted a license to the public to use the land for the purpose above mentioned. This license, of course, could at any time have been revoked, and then any one going upon the land would have been a trespasser. But, under the circumstances, treating the plaintiff as an adult, and simply upon the question of the invitation held out to him, he was there by sufferance only. The defendant had no right intentionally to injure him, and it would be liable if it *heedlessly or carelessly* injured him while performing its own business. It owed him a duty to abstain from injuring him either intentionally *or by failing to exercise reasonable care*, but it did not owe him the duty of active vigilance to see that he was not injured while upon its land merely by permission for his own convenience. (*Nicholson v. Erie R'way Co.*, 41 N. Y. 525; *Byrne v. Railroad Co.*, 104 id. 363; *Splittorf v. State of New York*, 108 id. 205; *Cusick v. Adams*, 115 id. 55.) "

The doctrine was followed by this court in *De Boer v. Brooklyn Wharf Co.* (51 App. Div. 289) and is in accordance with the uniform current of authority.

No error was committed at the trial. The court refused to charge

as matter of law that the indications of fright exhibited by plaintiff's horse did not cast upon the defendant the duty of halting his automobile until the fear subsided, but left the question to the jury, saying: "You might see a horse in front of you in such a state of excitement that the situation would be one of such danger that the law might say as a matter of prudence you ought to stop for the time being. Whether that was the situation or not I leave for the jury." This must be the law. The rules governing the degree of care which individuals upon the highway should exercise for mutual safety are well settled and relate in their application to the danger to be reasonably apprehended under ever-varying conditions of exposure and peril. While the automobile is a lawful means of conveyance and has equal rights upon the road with the horse and carriage, its use cannot be lawfully countenanced unless accompanied with that degree of prudence in management and consideration for the rights of others which is consistent with safety. If, as the jury has found, the defendant was aware that the machine in his possession and control had so far excited the plaintiff's horse as to render him dangerous and unmanageable, and if having stopped at the urgent solicitation of the occupants of the surrey in order to afford them an opportunity to alight, he, before they could do so, started the machine again and so caused the horse to run away, a question of fact was clearly presented for determination whether, under all the circumstances, his conduct was characterized by ordinary care. While men may possibly differ in the solution of the question, it is surely not within the province of an appellate court to say that a determination adverse to the defendant is without support or justification.

The judgment and order should be affirmed.

All concurred.

Judgment and order unanimously affirmed, with costs.