## 331. WHISTENANT v. SOUTHERN STATES PORTLAND CEMENT COMPANY.

There is no liability for damages accruing from an injury received on a public highway and occasioned by the fright of an animal attached to a vehicle, where such injury is occasioned by the running of a railroad train in the usual course of its business, and where no unusual or unnecessary noises attend the locomotion of such engine and cars. No higher duty in this respect is imposed on railroads operated for the carriage of freight by private corporations than is incident to railroads generally.

Action for damages, from city court of Polk county—Judge Irwin. November 13, 1906.

Argued May 7,—Decided July 4, 1907.

*Seaborn & Barry Wright, J. A. Wright,* for plaintiff.

*Blance & Tison,* for defendant.

RUSSELL, J. Whistenant brought suit against the Southern States Portland Cement Company, to recover damages for personal injuries. The defendant demurred to the petition, and it was dismissed. The only question, therefore, presented for our consideration is whether the allegations of the petition were sufficient to withstand the general and the special demurrers. The defendant operated a railroad for private use; and it is insisted that rules different from those governing the liability of public-service corporations operating railroads should control. The allegations of the petition, in brief, are that the defendant, a private corporation operates a private line of railroad close to a public road or highway; that on the day named, the plaintiff was driving along the public road, and before he reached the point where the railroad and the public road run parallel with each other, he stopped and ascertained that the engine of the cement company was standing motionless near the company's plant; that he then drove along, and when he reached the point in the road nearly parallel to where the engine was standing upon its track, the engineer, without warning, started his engine and was in a short distance of plaintiff when his horse became frightened at the approaching engine; that, "owing to a large and deep ditch being on the east side of the public road, petitioner had no opportunity to turn his horse and wagon around, and was attempting to get his horse on and by said engine, horse being badly frightened and attempting to get away caused petitioner's wagon to come uncoupled, causing and forcing petitioner to jump out of said wagon and to catch and take hold of the horse by the bridle. Defendant's engineer, seeing petitioner's plight and the unmanageable and frightened condition of his horse, made no effort or attempt to slow down or stop his engine, but ran on by where petitioner was, and within about twenty feet of him, for a distance of about thirty yards, and then backed said engine into a switch which runs parallel with the track, and coupled to some cars, and had started back to main line of railroad with engine and cars, the engineer still being in clear view of plaintiff, and,

seeing his horse frightened by the passing of engine, continued on by petitioner, and when opposite him his horse became frantic with fear and uncontrollable, and jumped forward and jerked petitioner in the ditch running along and parallel with the public road." It is alleged that the defendant was negligent, in maintaining a line of railroad in such close proximity to the public road, it being a place where stock being driven along said road were likely to become frightened and were frightened by the operation of said railroad; and that the company was negligent, through its engineer, in running its engine and continuing to run it in such close proximity to the petitioner after seeing his horse was frightened, and in making no effort to stop his engine, though his horse was frightened. It is not alleged that the horse was gentle or roadworthy.

Unless the company was negligent in having its railroad near the public road, or unless it is the duty of one operating a private railroad to suspend operation on its own track when it sees an animal frightened in the highway near by, the horse was the proximate cause of plaintiff's injury. If the defendant company had no right to maintain its railroad in such close proximity to a highway upon which horses were likely to become frightened, or if it was the duty of the engineer, when he saw the frightened condition of the horse, to have desisted from the service he was performing for his master (away from the public road, though near by and in sight of it), then, according to the allegations of the petition, the defendant's engine, being the cause of the horse's fright, can be considered as the causa causans, which produced the plaintiff's injuries. There can be no question that the defendant would be liable if its engineer, wantonly or wilfully, by making useless and unnecessary noises, had frightened the horse and thereby caused the injury to the plaintiff. *Barclay* v. *W. & A. R. Co.,* 102 *Ga.* 546, in which a judgment of nonsuit was reversed because it was easily inferable from the plaintiff's evidence that the noise was made wilfully and wantonly, without any other purpose than that of frightening the plaintiff's mules. But it is not alleged that there was anything unusual in the operation of the engine which frightened the horse in this case, nor that any unusual noise was made. It is, therefore, simply a question as to whether the engineer had the right to make any noise or do anything in the

conduct of his business, after he saw plaintiff's horse was fright-
ened. It is insisted by learned counsel for plaintiff, that this
case is not controlled by the decision in *Hill* v. *Railway Co.,* 101
*Ga.* 66, and cases therein cited, for the reason that the defendant
in this case is "a purely private concern, with none of the public
duties, affording none of the public conveniences, and bound by no
schedule, rules, tariffs, etc. It serves itself only, and not the
public;" and that "the reason for the distinction is apparent and
just, and rests upon the difference between a public and a private
service." We fail to see the application of the distinction sought
to be drawn. It is true that a public corporation is required to
perform certain public duties which do not devolve upon a private
corporation. But at last, both are run primarily for the pecuniary
gain of their stockholders. The fact that healthful regulation of
the terms upon which public corporations shall deal with the pub-
lic at large (who must of necessity have business relations with
them) is necessary does not seem to us to illustrate the point in
this case. It certainly would not affect the person injured. The
pain, the suffering, and the injury would be no less nor greater, if
one's horse were frightened, whether the engine was public or
private. The horse could not be presumed to know the difference.
It has been several times held that a railroad company is not re-
sponsible for the fright of animals caused by the ordinary opera-
tion of their trains. *Ga. R.* v. *Thomas,* 73 *Ga.* 350; *Morgan* v.
*Central R.,* 77 *Ga.* 793, and others. It is equally well settled that
the company will be liable for unnecessary noises. *Ga. R.* v. *Carr,*
73 *Ga.* 557, 558; *Hill* v. *Rome St. Ry. Co.,* 101 *Ga.* 66. It is
true that the defendants in these cases were public corporations;
but the principle upon which each was decided was that the artifi-
cial person, just as the natural person might do, could pursue
its ordinary vocation if it were such that no injury was intended
to others, and if the business was such as did not necessarily tend
to affect and invade the rights of others. The same reason must
control when the operation of a private corporation is concerned.
Most of the cases cited by the learned counsel for plaintiff apply
specially to nuisances; and it has been held that a private concern
operated *upon* a public highway is a nuisance. This action, how-
ever, is brought upon the ground of negligence. The petition
plainly shows that the damages are sought for injuries which, it

is claimed, resulted from the defendant's negligence, and there is
no hint that the injury was occasioned by a nuisance.  It is to be
presumed that the defendant was exercising a legal right in run-
ning his engine; for its name imports a corporation and implies
creation by law.  It is likewise to be presumed that its location
near the public road, which is alleged to be negligence, was per-
mitted by a contract authorized by law.  It is not alleged that the
engine was being run at a high rate of speed or at an unusual or
unlawful rate of speed.  There is no allegation that any unusual
or unnecessary noises were being made by the engine.  The origi-
nal fright of the horse, as alleged, was due to seeing the engine;
and there is no allegation of negligence at all with reference to
this, unless it be that the engineer started the engine without any
warning.  The company would not be liable for the fright of the
horse due to the mere appearance of the engine.  O'Donnell *v.*
Chicago, 69 Iowa, 102.  Nothing is alleged as to the character of
the horse or as to his previous conduct.  In many decisions in
cases originating from the fright of an animal, stress is laid on
the fact that the horse was gentle.  From the absence of this alle-
gation in this petition it can perhaps be presumed that the horse
in question was not a trustworthy animal.

As was said by the Supreme Court, in *Atlanta Ry. Co.* v. *John-
son*, 120 *Ga.* 912, "From aught that appears it was as much the
fault of the horse as anything else.  It is not charged that the car
was running at a high rate of speed, or that an unnecessary or un-
lawful noise was made by its running.  Indeed, a fair inference
from the petition is that, after becoming frightened, the mere
sight of the cars aggravated the condition into which the horse had
gotten.  The defendant was doing only that which it had a right
to do."  So far as the first allegation of negligence is concerned,
we must conclude that the judgment of the trial court in dismiss-
ing the petition was right.  However annoying it may be to have
your horse frightened by a passing train, it can not be said to be
negligence on the part of a company operating a railroad, whether
public or private, to place its track near a road.  If the location
of the railroad, upon any legal ground, can be objected to, the
case would be one of nuisance, and not of negligence.

The second allegation of negligence was likewise without merit,
because the defendant's servant was only doing what he had the

right to do. Furthermore, the allegations of the petition disclose such negligence on the part of the plaintiff himself as by their very terms offset any negligence on the part of the defendant. He was attempting to get his horse on and by the engine after it was apparent that the horse was badly frightened. This was recklessness and negligence tending to aggravate the fright of the horse. It is next alleged that the wagon became uncoupled. It not being alleged that the uncoupling was due to the fright of the horse, it is to be presumed that it was due to the defective construction of the wagon; and as this was the cause of the plaintiff jumping out of the wagon to hold the horse, which thereupon jerked him into the ditch, it may be that the uncoupling of the wagon was the occasion of the injury. Perhaps if the plaintiff had not jumped out to hold the horse, he might have avoided the injury altogether.

This case is controlled by our prior decision in *Southern Ry. Co.* v. *Flynt,* ante, 162. But authorities, almost without number, sustain the proposition that no matter how great the nuisance (as used in common parlance), nor even how great the danger from the running of trains near by and not upon a public road, there can be no recovery for injuries sustained by reason of the fright of animals, unless the same were caused either in the making of unnecessary and unusual noises, or by the agents of the company, either wilfully and wantonly, or otherwise unnecessarily or unlawfully frightening said animals. The cases of injury arising from the running of automobiles are dissimilar to the case at bar, in that these vehicles are run in the public road, to which the citizen driving his horse is as much entitled as he who is traveling in the automobile. This fact is adverted to in all the cases upon the subject, which we have been able to examine. In Shinkle *v.* McCullough, 116 Ky. 960 (while the real gravamen of the complaint was that the high rate of speed at which the automobile was run was the cause of the animal's fright, and the noise was only incidental to the running), attention is called to this equal right on the public highway. In other decisions which we have investigated, the fright of the horse was caused *on* a public highway, but in each the frightening cause was also in the highway.

In Myers *v.* Lape, 101 Ill. App. 182, a lady brought suit for damages, and recovered. Her injuries were serious, and were caused by the frightening of her horse as she was driving on a pub-

lic highway.  The fright of plaintiff's horse was caused by a pony belonging to the defendant, which was of a very unusual size and mischievous appearance.  The Court of Appeals of Illinois set aside the verdict, holding that the mere fact that a horse is small or of unusual color does not preclude the owner from using it on the public highway, even though some other horse may become frightened at it.  The same court, in Galt *v.* Woliver, 103 Ill. App. 71, affirmed a judgment for damages in favor of the plaintiff whose horse was frightened by a corn-shredder on the roadway.  But the evidence showed (what does not appear from the petition in this case) that the .plaintiff's horse was ordinarily a perfectly gentle animal, and that the corn-shredder, which had broken down and was of strange appearance, had been negligently left on this public highway for several months before the accident, in spite of repeated orders given to the defendant to remove it. In Knight *v.* Lanier, 12 Am. Neg. Rep. 157, 74 N. Y. Supp. 999, the plaintiff's horse was frightened by an automobile on a private lane on which the plaintiff was riding as a licensee; and the judgment was affirmed, the court leaving to the jury what was the duty and consequent liability of the automobile driver, under the peculiar circumstances.  But the case turned upon the respective rights of the parties in a lane which both had the right to travel. The casualty took place in a road or way where both parties had a right to be.  It was not, as in the present case, an instance of the pursuit of one's ordinary vocation on his own premises.  The case of Indiana Springs Co. *v.* Brown, 18 Am. Neg. Rep. 392, is also a case of damage resulting from the careless operation of an automobile.  The plaintiff relied on a municipal speed ordinance and negligence in the operation of the automobile.  The horse was gentle and well broken, but became frightened at the automobile approaching not only with unusual noise but at the unusual speed of twenty miles an hour.  The judgment was affirmed, but the court held that the liability of the defendant was not due to the fact that plaintiff's horse might become frightened at its passage along the highway in an ordinary and careful manner, although its tendency might be to frighten horses and sometimes to cause injuries.  As long as the automobile was carefully and prudently run, in spite of its noise and appearance, the automobile had an equal right on the highway with the horse and buggy.  The plain-

tiff begged the automobile driver to stop his machine and to allow him to take his horse, which the defendant plainly saw was frantic with fright, to a near-by cross-street and get the animal out of the road. The chauffeur totally ignored the request and proceeded at his reckless rate of speed to pass the horse, which ran away. The liability of the defendant, however, was expressly attributed to defendant's inconsiderate and reckless disregard of plaintiff's reciprocal *right of the road.* The Indiana case is not unlike that of *Murphy* v. *Meacham, 1 Ga. App.* 155, in which it was held that "if the automobile was being run properly and not in an unusual manner, the defendant would not be liable merely because the mule was frightened and the plaintiff injured."

A railroad company is not liable for personal injuries resulting from a horse taking fright at the appearance of a standing car or engine, unless the car has been *left* standing on or near the public highway. The allegation in this case is that the engine was near the company's plant.

Nor does the fact that the plaintiff's horse was frightened by the sight of the moving locomotive or car, or by the noise naturally incident to its ordinary operation, nor the fact that the track was laid on its own land though near by a public road, render a railroad company liable, without more. If a horse is frightened by the noises of a locomotive or train or escaping steam from the engine in the necessary and proper operation of its machinery, the railroad is not liable for personal injuries resulting from the fright of a horse being driven on a near-by highway. There is no negligence, because there is an absence of a duty towards those who are driving in the public highway. The servants of the company and its engine are where they have a right to be, and they have a right to use their locomotive and train, presumably without affecting the rights of others. If, however, any act is wantonly or maliciously or negligently or unnecessarily done in the operation of either engine or cars, by which a traveler on the public highway is affected, the individual or corporation operating a railroad or any other instrumentality is liable. So far as the duty and consequent liability of an individual or corporation operating a private railroad is concerned, it does not differ from that of a common carrier operating a railroad so far as the rights of travelers along public highways are concerned. The duties of a public

railroad are essentially different in many respects from those de-
volving upon one who merely uses his private railroad for his
own purposes and in the conduct of his business alone.  But as
to the traveler on a public highway, the same rule is applicable to
both.  The maxim sic tuo utere ut non alienum lædas applies to
both, with the privilege, however, of regarding the well-known
fact that all roadworthy animals are not afraid of trains.

*Judgment affirmed.*