### BRANTLEY *v.* RHODES-HAVERTY FURNITURE CO. *et al.*

1. In a suit for malicious prosecution of a criminal case, without probable cause, or a malicious use of legal process in a civil case, consisting in maliciously instituting and prosecuting such a case without probable cause, it is necessary to allege and prove that the action in which the process issued has been finally determined in favor of the defendant therein. In an action for a malicious abuse of process by employing process, legally and properly issued, wrongfully and unlawfully for a purpose which it was not intended by law to effect, it is not necessary to allege and prove the termination of the action in which the process issued.

2. A petition alleged that an action to recover personal property was brought, and bail process was taken out in connection therewith, under the Civil Code, §4604; that the plaintiff in the action knew that the defendant did not have the property in her possession, custody, or control; that it was the purpose of the proceeding to compel her to give up a certain piece of jewelry which she wore on her person, and to pay a debt due by her for a balance of the purchase-money on the furniture; that she was arrested, and kept in custody for five hours; that the purpose of the process and the use which it was made to serve was not that contemplated by law, but was to compel her to surrender a diamond brooch, and to make payment of a debt in agreed instalments; that she was thus coerced into delivering the diamond and signing an agreement in regard to making payment, and was thereupon released. *Held,* that the petition set out a case of malicious abuse of legal process.

3. The evidence introduced in support of the action made out a prima facie case, and the granting of a nonsuit was error.

Argued May 19,—Decided August 13, 1908.

Action for damages. Before Judge Ellis. Fulton superior court.. November 15, 1907.

Mrs. M. L. Brantley brought suit against the Rhodes-Haverty Furniture Company, a corporation, and Clarence Haverty. Her

declaration as amended alleged, in brief, as follows: The defendant company brought an action against the present plaintiff, to recover certain furniture alleged to be in her possession, custody, or control, and, acting by and through its representative and agent, Clarence Haverty, made a false and malicious affidavit in order that process might issue against her from the city court of Atlanta, requiring the officer of that court to arrest her; and such process was issued. The affidavit so made alleged, that the company was about to institute a suit against Mrs. Brantley for the recovery of certain specified personal property; that it was in her possession, custody, or control; that the deponent and the company had reason to apprehend that it would be eloigned or moved away, and would not be forthcoming to answer the judgment or decree that should be made in the case; that the value of the property was $102.15, and that the furniture company claimed said property as belonging to it. The statements made in this affidavit as to her possession, custody, or control of the property were false, and were known to be false by the affiant at the time he made the affidavit; and he made it with malice and without probable cause, and for the purpose of forcing Mrs. Brantley to give up a certain piece of jewelry which she wore on her person, and to compel her to pay a debt. Service was made upon her by a deputy sheriff of the county, by arresting her. The arrest occurred as she was about to be seated at the dining-table of the hotel where she boarded, and she was kept in custody of the sheriff from noon until five o'clock p. m., during that time being deprived of her liberty and subjected to the mortification and humiliation of personal detention. She was taken from the office of her attorney to that of the attorneys for the plaintiff in the bail-trover action, and was informed by the sheriff that the process meant imprisonment in the county jail, unless she would give up the property sued for, or give bond, neither of which it was in her power to do. While in actual custody of the deputy sheriff, she was told by the "defendant" in the present case that, unless she gave up the jewelry or paid the money, she would have to go to jail. The purpose of the process was not to obtain the furniture or bond, but to coerce payment. While under duress and in the custody of the deputy sheriff, to save herself from the disgrace and humiliation of imprisonment, she took from her person a diamond brooch or pin, of the value of

$75.00, and delivered it to one of the defendants, Clarence Haverty, who retains it in his possession, and refuses to return it to her. Haverty was informed, before the bail-trover action was commenced, that the furniture for which it was brought was not in the possession of Mrs. Brantley, but that possession of it had been .taken from her by one Farlinger, and that a suit had been filed against him to recover it. When Haverty made the affidavit stating that the property was in her possession, custody, or control, the statement was not true, and the real facts were known to him. When she surrendered the diamond brooch, the action at law subjecting her to arrest was suspended by a promise that it would not be further prosecuted if she would continue to pay $10 per month. The process, after being issued, was made to serve a purpose not contemplated by law as its legal function, but to coerce her, and to subserve a different purpose. All the tortious acts alleged are joined as one continuous transaction, and as one count for damages.

A demurrer to the petition was overruled, and the defendants filed exceptions pendente lite. On the hearing the plaintiff testified, in substance, as follows: She bought furniture from the Rhodes-Haverty Furniture Company to the amount of $282.00, and paid all the purchase-money except $102.15. They claimed to hold the title to the furniture until it was all paid for. It was in a house in her possession during the spring of 1905. She made a bill of sale to one Farlinger, covering the property in the house. She explained to him that there was a balance due on the furniture, and she was to keep possession of it, and did so. She rented the house to another person. On May 1, 1905, without her knowledge or consent, Farlinger went there and removed to his own residence all the furniture, including that bought from the Rhodes-Haverty Furniture Company. She told Clarence Haverty this, and that she had notified Farlinger that she owed a balance, and informed Haverty that he could go and get the property. He was the manager of the furniture company, and her dealings were with him. Sometime afterward, while she was boarding at a hotel, when on her way to luncheon, an officer came to her and informed her that she was under arrest unless she surrendered the property she had bought from the Rhodes-Haverty Furniture Company, and that the paper which he served on her was a bail-trover

process, and meant that she must give up the property, make bond, or go to jail. He allowed her to consult her attorney, and afterwards carried her to the office of the attorneys for the plaintiff. There a proposition was made to her by the "defendant" to give her diamond brooch as collateral, which she at first declined to do. Finally, after the deputy sheriff had kept her in custody for five hours, Haverty suggested that, as she could not produce the property or give bond (she told him she could do neither), she might arrange the matter by giving him a diamond brooch which she wore on her person, and signing an agreement to pay ten dollars per month until the debt should be paid. She told him she would do anything that was honorable to keep from going to jail. She was sick and faint. He suggested the delivery of the jewelry. When her attorney heard of it, he advised her not to give up her jewelry. Two hours more passed, and she told Haverty she would surrender anything except her honor, to be released. At that time her attorney had left the office, while the sheriff still held her in custody. Then it was that she gave Haverty the diamond brooch and signed the papers which they presented to her. At that time she would have signed anything. She was sick and frightened. She had had no dinner, the day was hot, and she had been in the custody of the sheriff for five hours. She did not agree to give the pin at first; but when the sheriff, in the presence of Clarence Haverty, in the office of the attorneys for the plaintiff in the trover proceeding, told her that the process meant imprisonment unless she did one of two things,—produce the property or give bond, and that otherwise she must go to jail, she took the brooch from her person and gave it to Haverty, and has not seen it since. The paper which she signed was that of which a copy was attached to the defendant's plea. The brooch was worth a hundred dollars. She afterwards demanded it from Haverty, because she did not willingly give it up.

The deputy sheriff testified, in substance, as follows: He remembered the transaction when Mrs. Brantley was arrested. She was coming down from her room at the hotel. He showed her the bail-trover writ. She asked to be taken to her attorney's office. He did so, and then took her to the office of the attorneys for Rhodes-Haverty Furniture Company; took her there after several hours. There was some discussion about her jewelry. Her attor-

ney "told her not .to surrender the jewelry that they asked her to give up." After her attorney left, she did give it to Haverty, and signed some sort of paper. She had been in custody several hours before she did so. Clarence Haverty was present when the deputy sheriff told her that she must give bond or go to jail. She said she could not give the bond. Then the officer told her she might produce the property. She said Mr. Farlinger had it, and she could not produce it; that she was already trying to make him account to her for taking the goods. She gave the diamond brooch to Haverty, and was then released.

The copy agreement attached to the plea recited that Mrs. Brantley had purchased from the Rhodes-Haverty Furniture Company certain furniture, the title to which, by contract in writing duly executed, was to remain in the company until the payment in full of the purchase-price; that there was due upon it the sum of $102.15 unpaid; that the company had brought suit against her, and had sued out bail·process, under which she had been arrested, the officer failing to seize the property described in the suit; and that "the party of the first part [Mrs. Brantley] desires to adjust the matter in some way, and whereas the party of the second part [the furniture company] is willing to suspend the present proceedings;" and declared that the parties thereupon agreed that she should at once deliver the property to the company, and unless she did so, she should pay to it the sum of $10 per month until the balance due should be paid, "and she now delivers to the party of the second part a certain diamond and pearl brooch, which said party of the second part is to hold as collateral security for the payment of said sum of $102.15, and until the surrender of said property, or the·payment in full of said sum; and so long as the party of the first part carries out the terms of this agreement said suit is to remain in suspense."

The presiding judge granted a nonsuit, and the plaintiff excepted. The defendant filed a cross-bill of exceptions, assigning error on the exceptions pendente lite.

*J. H. Pitman*, for plaintiff.

*Dorsey, Brewster, Howell & Heyman*, for defendants.

LUMPKIN, J. (After stating the foregoing facts.)

1, 2. This case does not require a discussion of the various forms of action which may be brought to recover damages for an injury

sustained by reason of the wrongful use of legal proceedings or process, according to the facts of any particular case. It is enough to consider whether this action is one for malicious prosecution (using the term in a broad sense, so as to include both criminal prosecutions and the similar malicious use of legal process consisting in instituting and prosecuting a civil case without probable cause), or whether the petition sufficiently sets out a case for a malicious abuse of legal process. If an action has been instituted and prosecuted with malice and without probable cause, a suit for malicious prosecution will lie. If a party knowingly employs process, legally and properly issued, wrongfully and unlawfully for a purpose which it is not intended by law to effect, there is a malicious abuse of process, and an action will lie therefor. In the former class of actions it is necessary to allege malice, want of probable cause, and that the action in which the process issued has been finally determined in favor of the defendant therein. In the latter class a suit may be maintained before the action in which such process was issued has terminated. It has been said that "the principal distinction between an action for malicious abuse of process and one for malicious prosecution is, that while the former lies for an improper use of the process after it issues, the latter is a malicious suing out of the process without probable cause." 19 Am. & Eng. Enc. Law, 630-632; *Porter* v. *Johnson,* 96 *Ga.* 145 (23 S. E. 123) ; *Mullins* v. *Matthews,* 122 *Ga.* 286 (50 S. E. 101) ; 1 Jaggard, Torts, 632. Taking the allegations of the plaintiff's declaration as a whole, we think they set out a cause of action for a malicious abuse of legal process. As amended, the petition alleged that the affidavit to obtain bail process was made maliciously and without probable cause, and for the purpose of forcing plaintiff in the present case to give up a certain piece of jewelry which she wore on her person, and to compel her to pay a certain debt. And again it was alleged that the purpose of the process was not to obtain the furniture or bond, but to coerce payment; and that it was used for the purpose of having her arrested and compelling her, while under arrest, to surrender a piece of jewelry as security, and to sign a paper agreeing to pay $10 per month until the balance due on the furniture which she had bought should be settled. The legitimate purpose of making an affidavit to require bail in an action to recover personal property

is to require bond to be given for the forthcoming of the property to answer such judgment, execution, or decree as may be rendered or issued in the case, or, on failure thereof, to have the officer seize the property, or, if it is not to be found, to have the defendant committed to jail until the property shall be produced or bond be given, unless the defendant shall be released without security, as provided in section 4608 of the Code. Civil Code, §§4604-4608. It is not the legal purpose of such a proceeding to compel the defendant to give up other property as security for a debt, nor to force the defendant to enter into a new and different contract in regard to payment, or else go to jail. While debtors ought to pay their debts, and parties may settle their controversies or their lawsuits, yet, if a bail process and arrest under it are used, not for the purpose of obtaining security as provided by law, or to cause the property to be seized, but maliciously for the purpose of coercing the delivery to the plaintiff of other property as a security for a debt and the making of a new contract, this is an abuse of legal process. While the petition was originally subject to demurrer, and the pleader at first apparently had in mind both forms of action, as finally amended a cause of action for malicious abuse of legal process was sufficiently set out. It was alleged that plaintiff did not seek to recover for different torts or causes of action; but that the petition stated the facts so as to show the circumstances of a single tort. There was no error in overruling the demurrer to the petition as amended.

3. The granting of a nonsuit was erroneous. The evidence showed, that the plaintiff was arrested under the bail-trover process, and carried first to the office of her attorney, and then to the office of the attorneys for the plaintiff in that proceeding; that she was detained in custody for about five hours; that the representative of the then plaintiff knew that she could neither produce the property nor give bond, and was informed that the property was in the possession of another, and that Mrs. Brantley was at the time endeavoring to recover possession of it. According to her testimony, the representative of the furniture company recognized her inability to give bond or to produce the property, but proposed to her to surrender to him a piece of jewelry which she wore on her person, and to enter into a contract for the payment of the balance due on the furniture in installments of ten dollars

per month.   She at first declined to do this; but after being held in custody for a considerable length of time, and under fear of having to go to jail, she at last yielded, signed the paper which was prepared for her by the representative of the company, and gave him her diamond pin as security, so as to be released from custody.   What the jury may determine, with all the evidence before them, we do not know.   But there was enough to have required a submission of the case to the jury, and a nonsuit should not have been granted.

*Judgment on main bill of exceptions reversed; on cross-bill affirmed.   All the Justices concur.*