24239. CITY OF COLUMBUS *v.* WEBSTER.

DECIDED MAY 21, 1935.

*William deL. Worsley,* for plaintiff in error.
*Terrell & Terrell, Palmer & Wohlwender,* contra.

BROYLES, C. J. Miss Mamie Webster brought suit for damages against the City of Columbus and M. J. Kendrick, alleging that she was an employee of the defendant city in the capacity of dietitian at the city hospital, an institution owned and operated by the city under power vested in it by an act of the General Assembly; that the city and Kendrick, acting jointly and with common intent and purpose, caused to be issued a search warrant for the purpose of having petitioner's house and automobile searched for "groceries" alleged to have been feloniously stolen and carried away by petitioner; that the affidavit upon which the search- warrant was based was made by M. J. Kendrick, who deposed "that groceries of different kinds have within the last week been feloniously stolen and carried away from the possession of this deponent; and that deponent verily believes upon probable cause that the said goods so stolen as aforesaid have been and are now concealed in the dwelling house and automobile of Miss Mamie Webster;" that the search warrant was executed by a detective of the city, and petitioner was "illegally and falsely detained and arrested;" that the affidavit and warrant were made and issued without probable cause, and that the accusations therein were false; that upon a careful search of petitioner's car by said detective, nothing was found that had been stolen or secretly taken from the hospital. However, there were in the car "a little pan or bucket of food scraps that petitioner had placed there to carry home for her cat and dog, a few meat scraps and bread scraps left upon the trays and plates of patients, nurses, servants, or employees, not for human consumption but for the garbage can unless fed to cats and dogs. Besides these scraps of food there was a small glass jar of ice cream that some of the helpers or servants had placed in petitioner's car for petitioner; that said refuse scraps of food were worthless and unfit for human consumption, and the ice cream might have been worth 15 or 20, certainly not exceeding, 25 cents. The one half pint of cream, the four oranges, and the one loaf of bread belonged to petitioner, and the one quart of milk and the one pound of butter likewise belonged to her in exchange with hospital, as petitioner had done before in order to preserve the purity and freshness of such food for patients of the hospital;" that petitioner was thereafter discharged as an employee of the hospital as a result of the "false, malicious, and wrongful charges by persons in charge of said city hospital, the

agents, servants, and employees of said city, and defendant Kendrick to the effect that petitioner had been guilty of stealing;" that "said search warrant was issued at the instance of said defendants for the purpose of drumming up or conjuring up some charge against petitioner to be given as the real excuse for such discharge;" that such charge was found to be groundless; that the processes of affidavit and warrant were "maliciously abused by said defendants;" that "said affidavit and warrant were issued as aforesaid for no bona fide cause, but for an ulterior purpose, which said process of the court was maliciously abused, misused, or perverted so as to accomplish an object or purpose which the law does not intend such a process to effect, all of which was inspired, entered into, carried out, and consummated by and between said defendants, their agents, servants, and employees, and for the purpose and design to embarrass, frighten, and force your petitioner to resign her said position as dietitian of said hospital, and to fabricate a baseless charge without any probable cause or foundation whatever to offer as an excuse to discharge her should she not resign;" that "the said hospital was not and is not maintained and operated as a charitable hospital or institution, but operated for private gain or as a profit-making enterprise, and charged and still charges fees to patients using the same, and imposes and collects such fees and charges of persons admitted therein for treatment;" that because of the malicious abuse of the process above stated, and the execution thereof, petitioner suffered indescribable mental and physical pain, her health was injured, especially her nervous system, she was humiliated, embarrassed, and held out to the world as a petty thief, and was discharged from her position with the suspicion of crime on her; and she prayed for damages.

The City of Columbus demurred to the petition, on the ground that it set forth no cause of action against the city; that the acts complained of were in the performance of governmental functions; and that they were ultra vires acts. The court overruled the demurrer, and on this judgment the city assigns error.

"An action for malicious abuse of legal process will lie where legal process has been employed for some object other than that which it was intended by law to effect." *Porter* v. *Johnson, 96 Ga.* 145 (23 S. E. 123). In view of the allegations of the petition as amended in the instant case, "we have no hesitancy in ruling that

the petition set forth, in substance, a cause of action for the malicious abuse of legal process. 'There is a malicious abuse of process where a party employs process legally and properly issued, wrongfully and unlawfully for a purpose which it is not intended by law to effect; and for such malicious abuse of civil or criminal process an action will lie against the plaintiff or the officer responsible for the abuse.' . . If the allegations of the petition be true, and they must be so considered in passing on the motion in the nature of a general demurrer, then all the defendants were liable for the abuse of the process." *Mullins* v. *Matthews,* 122 *Ga.* 289. According to the allegations of the instant petition, the purpose of the defendants in having caused the process to be issued was not to recover property of the defendants or either of them, but to embarrass and humiliate petitioner and force her to resign her position, or to "drum up" an excuse for discharging her. If this be true, the process "was made to serve a purpose not contemplated by law as its legal function." *Brantley* v. *Rhodes-Haverty Co.,* 131 *Ga.* 276 (62 S. E. 222). See also *King* v. *Yarbray,* 136 *Ga.* 212 (71 S. E. 131); *Atlanta Ice & Coal Co.* v. *Reeves,* 136 *Ga.* 294 (71 S. E. 421, 36 L. R. A. (N. S.) 1112); Salt Lake City *v.* Hollister, 118 U. S. 256, 262 (6 Sup. Ct. 1055, 30 L. ed. 176).

It is undisputed that a municipality is not liable in damages for the acts of its employees in the performance of a governmental function; and necessary acts, under statutory authority, for the preservation of the public health, within proper limitations, are governmental functions; but the issuing of the search warrant and the searching of plaintiff's car, under the circumstances and for the purposes alleged in the petition, were not necessary acts in the performance of a governmental function, or in the preservation of the public health. The acts in question, even if authorized, were acts in the performance of a ministerial function and not of a governmental function. Moreover, the acts were not performed in behalf of an institution operated for the benefit of the public generally, but for one operated for the citizens of Columbus. Furthermore, according to the petition, the hospital was not an eleemosynary institution, but one operated largely for private gain. So far as the petition shows, no one was admitted or treated free. However, the test relative to governmental functions, as to city hospitals charging fees, is not whether there are incidental charges, or

whether a few are charged, or whether a few are not charged, or whether the institution is successful in making a profit, but whether it is operated primarily as a profit-making enterprise. *Cornelisen* v. *Atlanta,* 146 *Ga.* 416 (2) (91 S. E. 415), and cit.

The petition alleges that "the said hospital was not and is not maintained and operated as a charitable hospital or institution, but operated for *private gain* or as a *profit-making* enterprise, and charged and still charges fees to patients using the same, and imposes and collects such fees and charges of persons admitted therein for treatment." (Italics ours.) Furthermore, this "private gain" and "profit-making" is permitted by the charter of the City of Columbus. Under the charter the city has authority to either admit patients free or to charge them, and, according to the allegations of the petition, it charged them. The act (Ga. L. 1915, p. 567) authorizing the city to own and operate the hospital does not make it mandatory for the hospital to admit or treat any patient free of charge. It provides that the City of Columbus "is hereby invested with the power to adopt such rules and regulations as to the admission of persons therein for treatment, and with respect to the management, operation, and control of said hospital, as to it may seem expedient, . . and impose and collect such fees and charges of persons admitted therein for treatment, and under such terms and conditions as it may deem necessary and proper."

In *Love* v. *Atlanta,* 95 *Ga.* 129 (22 S. E. 29, 51 Am. St. R. 64), cited by counsel for plaintiff in error, it is said (pp. 131 and 133) that where injuries are inflicted because of the misfeasance of an "agent of a corporation acting for it in the discharge of a duty on behalf of a municipal corporation while it is engaged in the exercise of some private franchise, or some franchise conferred upon it by law which it *may* exercise for the *private profit* or convenience of the corporation or for the convenience of *its citizens alone,* in which the general public has no interest, . . a right of recovery lies against the city. . . It will be observed, however, that in order to exempt a city from liability, it is not sufficient to show that the particular work, from the negligent performance of which by the servants of the city a citizen was injured, was being performed under the direction of the health authorities; but it must be shown that the particular work so being done was connected with or had reference to the preservation of the public health." In *Watson* v.

*Atlanta,* 136 *Ga.* 370 (71 S. E. 664), cited by counsel for plaintiff in error, and wherein judgment was rendered for the city, the injury was alleged to have been sustained by the plaintiff in consequence of being knocked down by a Grady Hospital ambulance in charge of employees of the city; and the court held that "the operation of the ambulance is an incident to the maintenance and operation *of the hospital itself,*" and is consequently a governmental function. (Italics ours.) In the instant case the affidavit upon which the search warrant was based shows that the goods were alleged to have been stolen from Kendrick individually and not from the hospital. The affidavit is made a part of the petition; and the petition alleges that Kendrick and the city acted jointly and with *joint purpose and intent* in procuring and having issued the search warrant for the wrongful purpose aforesaid. The search warrant is also made a part of the petition, and there is nothing therein to show that the goods alleged to have been stolen belonged to or were taken from the hospital, but on the contrary it shows that they were alleged to have been "feloniously stolen and carried away from the possession of deponent," M. J. Kendrick. Certainly, causing a search warrant to be issued and executed for the purpose of having plaintiff's car searched to recover property of M. J. Kendrick was not "an incident to the maintenance and operation of the hospital itself," and was not a governmental function of the City of Columbus. Moreover, in the *Watson* case, supra, the court said: "Had the distinct allegation been that the hospital was established and operated for private gain and profit by the city, quite another case would have been made from that presented in this petition." In the instant case the distinct allegation was made that the hospital was operated "for private gain or as a profit-making enterprise." "In its corporate capacity as the owner of property held for its profit and advantage, the rights and liabilities of the town are measured strictly by the laws which determine all private rights and liabilities, and under the same conditions as a private corporation." Stanley *v.* Sangerville, 119 Me. 26 (109 Atl. 189, 9 A. L. R. 350).

Under the Columbus charter above referred to, no duty was *imposed* upon the City of Columbus to operate a hospital in the exercise of the sovereign power of the State, but it was merely *authorized* to do so, and such operation was a voluntary act of the

municipality. "In so far . . as they exercised powers . . voluntarily assumed,—powers intended for the private advantage of the locality and its inhabitants,—there seems to be no sufficient reason why they should be relieved from that liability to suit and measure of actual damage to which an individual or private corporation exercising the same powers for purposes essentially private would be liable." *City of Greensboro* v. *McGibbony*, 93 *Ga.* 672, 675 (20 S. E. 37). In *Adepe* v. *Thomasville*, 9 *Ga. App.* 880 (72 S. E. 478), it was held that in "furnishing electric lights for *pay*, a city is engaged in a private, non-governmental business, and is liable to one injured through negligence of its employee engaged in repairing wires. . . In operating an electric-light plant, the city is acting in a private corporate capacity, instead of exercising a governmental function. . . Furnishing electric lights *for pay* is an occupation similar to furnishing water for pay." (Italics ours.) In *Huey* v. *Atlanta*, 8 *Ga. App.* 597 (70 S. E. 71), it was held that "The operation of a system of waterworks is not such a governmental function as that a city is not liable for injuries resulting through negligence in the maintenance thereof;" and in the opinion it was said: "Dillon on Municipal Corporations (4th ed.), § 985, states the rule that 'municipal corporations are liable for the improper management and use of their property to the same extent and in the same manner as private corporations and natural persons.'" "There is an implied or common-law liability for the negligence of a municipal corporation in the performance of corporate acts which have relation to the management of the corporate or private concerns of the municipality and from which it derives special or immediate profit or advantage as a corporation, or for its acts or negligence in the exercise of corporate powers and duties for the peculiar benefit of the corporation in its local or special interest, which of course includes the management of property for *private gain* or the engaging in any *profit-making* enterprise, if it is authorized by statute or the provisions of its charter to engage in such private business. The fact that the profit or advantage inures ultimately to the benefit of the public, or may incidentally be of public benefit, does not render the enterprise a public function so as to exempt the municipality from liability." 43 C. J. 930, § 1705. In the operation of the hospital as a profit-making enterprise, the issuing of the search warrant and detaining

plaintiff and searching her car, alleged to be joint acts of the defendants, the municipality was not performing a governmental function. See, in this connection, *Savannah* v. *Jones,* 149 *Ga.* 139 (99 S. E. 294), and cit.

The defense of ultra vires by no means includes every act which is not specifically authorized. If so, practically every corporation would be exempt from suit, as no charter of a sanely conducted corporation authorizes unlawful or negligent acts. Where a municipality is acting upon matters within its general corporate powers, it will be liable for the negligent acts of its servants, provided they are not engaged in governmental functions. "The rules of law as to persons entitled to maintain an action for tort committed by a municipality are those generally recognized and applied in such actions against other classes of defendants. One whose person or property is injured may bring the action, although he is a corporator or an employee of the municipality." 43 C. J. 934, § 1712. In Stanley v. Sangerville, supra, it was held that "A town is liable in damages for libel in charging one with theft in a complaint for recovery of damages for carrying away a culvert belonging to the town in its corporate capacity." The defense of ultra vires "is not to be entertained where its allowance will do great wrong to innocent third persons." Denver Fire Ins. Co. v. McClellan, 9 Colo. 11 (9 Pac 771, 59 Am. R. 137), and cit. It "is looked upon by the courts with disfavor whenever it is presented for the purpose of avoiding an obligation which the corporation has assumed merely in excess of the powers conferred upon it, and not in violation of some express provision of the statute." Kennedy v. California Savings Bank, 101 Cal. 495 (35 Pac. 1039, 40 Am. St. R. 69). It "should not, as a general rule, prevail, whether interposed for or against a corporation, when it would not advance justice, but on the contrary would accomplish a legal wrong." Carson City Savings Bank v. Elevator Co., 90 Mich. 550 (51 N. W. 641, 30 Am. St. R. 457). It "is never entertained where it will injure innocent third persons. It is unavailing when its application would accomplish an unjust end, or result in the perpetration of a legal fraud." Wright v. Hughes, 119 Ind. 324, 21 N. E. 907 (12 Am. St. R. 412). "The defense is by some courts regarded as an ungracious and odious one, to be sustained only where the most persuasive considerations of public policy are involved, and there are

numerous decisions and dicta to the effect that the plea should not as a general rule prevail whether interposed for or against the corporation, where it will not advance justice, but, on the contrary, will accomplish a legal wrong." 14A C. J. 314, § 2163. "The law never sustains a defense of this nature out of regard for a defendant; it does so only where an imperative rule of public policy requires it." *Towers Excelsior Co.* v. *Inman, 96 Ga.* 506 (23 S. E. 418). "According to the weight of authority, where a municipality is acting upon matters within its general corporate powers, it will be liable for its acts, although they are done at an unauthorized place or in an unauthorized manner, or are otherwise in excess of such powers." 43 C. J. 934, § 1711.

Under the charter of the City of Columbus it had authority to operate the hospital in question and delegate the management and control thereof to managers. While the mere discharging of the plaintiff was an authorized act in the management of the hospital, yet when the city exceeded its corporate powers in its method of performing the act, thereby wrongfully and wilfully injuring the plaintiff, it can not be relieved of liability on the ground that the act was ultra vires. See, in this connection, *Towers Excelsior Co.* v. *Inman,* supra.

The petition as amended set out a cause of action, and the court properly overruled the general demurrer.

*Judgment affirmed. MacIntyre and Guerry, JJ., concur.*