WEST *v.* WEST.

No. 15097. MAY 8, 1945. REHEARING DENIED JUNE 7, 1945.

384

*O. C. Hancock, Thomas G. Lewis,* and *C. E. Moore,* for plaintiff in error.

*Herbert Johnson* and *Swift Tyler,* contra.

BELL, Chief Justice. ■ The grounds of the motion for a new trial will be dealt with in a slightly different order from that in which they appear in the statement.

In ground 2 of the amendment to the motion, it was contended that the court erred in permitting the plaintiff to testify that the defendant "would threaten and choke me," over objection that the word "threaten" was a conclusion. The testimony was given near the beginning of her evidence. The plaintiff later testified: "He has beaten me with a strap. He beat me to where I did not have a place on my back that was not black. I never made a case against him for that; he always told me he would kill me. . . He choked me the night before the one we have been talking about. He choked me until I could not even get my breath." Considering the nature of the ground upon which the suit for divorce was predicated, and the subject-matter of the testimony, the statement that "he would threaten me" was not subject to objection as being a conclusion of the witness. *Shiver* v. *Tift,* 143 *Ga.* 791 (3) (85 .S. E. 1031, L. R. A. 1918A, 622); *Davie* v. *Tanner,* 150 *Ga.* 770 (5) (105 S. E. 355); *Atlantic Coast Line R. Co.* v. *Register,* 37 *Ga. App.* 219 (2) (139 S. E. 735). This ruling is not in conflict with those in *Mayor &c. of Milledgeville* v. *Wood,* 114 *Ga.* 370 (40 S. E. 239); *Sumner* v. *Sumner,* 118 *Ga.* 590 (2) (45 S. E. 509).

■ In special ground 1, the movant complained because the court charged the rule of law stated in the Code, § 38-119, as to presumption arising from failure to produce evidence.

Under the pleadings and the evidence, there was no error in giving this charge. One of the issues in the case was the financial worth of the defendant. It appeared from the evidence that the defendant was engaged in business at Brunswick, Georgia, for three or four months during the year 1942. The plaintiff introduced documentary evidence showing that the defendant received about $24,000 in cash from that venture. The defendant testified: "The gross intake on that job was somewhere around $24,000. I think it is safe to say that 3 to 5 per cent. was the net, if you did not figure in the wear and tear on your equipment." He did not offer any written evidence to substantiate his contention that only a small portion of the sum received was profit, although from the evidence as a whole it could have been reasonably inferred that, if his contention was true, it could have been sustained by the introduction of canceled checks, receipts, or other documentary evidence. In these circumstances, it can not be held that the charge was unwarranted. Code, § 38-203; *Fountain* v. *Fuller E. Callaway Co.*, 144 *Ga.* 550 (87 S. E. 651); *Cotton States Fertilizer Co.* v. *Childs*, 179 *Ga.* 23 (174 S. E. 708); *Shiver* v. *Firemens Insurance Co.*, 60 *Ga. App.* 57 (2 S. E. 2d, 760); *Laney* v. *Barr*, 61 *Ga. App.* 145, 147 (10) (6 S. E. 2d, 99). The principle may be charged only in exceptional cases, and so, on facts different from those which appear in the instant case, it was held inapplicable in *Anderson* v. *Southern Railway Co.*, 107 *Ga.* 500 (2) (33 S. E. 644), *Central of Georgia Ry. Co.* v. *Bernstein*, 113 *Ga.* 175 (5) (38 S. E. 394), and *Brothers* v. *Horne*, 140 *Ga.* 617 (3) (79 S. E. 468).

■ The court did not err in permitting the witness, Miss Lilly Rutledge, to testify as to attentions shown to her by the defendant, including a proposal of marriage; nor in allowing in evidence certain letters admittedly written by the defendant to the witness, containing terms of endearment and the like. This evidence was admissible to corroborate the testimony of the plaintiff as to cruel treatment. *Kight* v. *Kight*, 152 *Ga.* 821 (111 S. E. 193); *Smith* v. *Smith*, 168 *Ga.* 725 (4) (149 S. E. 39).

■ In ground 4, the movant contended that the court erred in permitting certain questions to be propounded to the defendant on cross-examination with respect to a quantity of gasoline, mentioned in the record as 1085 gallons, which had been purchased by him from Wofford Oil Company in 1944, and placed by that company

in a storage tank at the defendant's home. Some of the questions inquired as to the kind of coupons, if any, he had used to obtain this gasoline, and as to how he came to the courthouse on the day of the trial. It was objected that the questions were immaterial and irrelevant, and illustrated no issue in the case; and in two instances it was stated further that the questions were prejudicial and hurtful. This ground of the motion showed numerous questions, objections, and rulings, with an occasional answer by the defendant. Reduced to narrative form, the entire evidence thus elicited would read substantially as follows: "I don't remember what kind of tickets [coupons]. I did not do any business this year, and consequently I did not get any tickets to go in business with. I came to the courthouse in an automobile borrowed from Mrs. Heatherington. I did not get the gasoline that was in the car anywhere. I don't know where she bought it. She has her own gasoline ration and [is] privileged to buy wherever she pleases. I have been in that automobile very few times. I bought the gas that was put in my tank out there for the usual purposes that gasoline is bought for—to use in a gasoline truck or motor or tractor—the usual things I used gasoline for. I probably, somewhere around the house, had an A book that was issued to me. When the Dodge car was sold, I was in the hospital, and I don't know what happened to the book or the car either."

The defendant had already testified at length on direct examination. The questions to which the objections were made were propounded to him on cross-examination. One issue related to his financial worth, as illustrating the amount of alimony that he should pay, if any. On direct examination, he had testified to the effect that he had not been in business for the past year or so; that he did not own a truck or automobile; that for one reason or another he had been stripped of practically all of his property; that he had not been able to pay some of his taxes; that certain hospital bills which he had been forced to incur on account of illness had not been paid; and that he had even come to the point of having to pawn some of his wearing apparel. In these circumstances, it was permissible to interrogate him on cross-examination as to his purchase of such a large quantity of gasoline and as to the purpose for which he purchased the same. It takes money to buy gasoline, and it commonly requires money to use it, to say

nothing of the machinery or vehicles in which it is consumed. There was no error in overruling the objections.

As to the source and kind of coupons that had been used in obtaining the gasoline, the questions may have tended in some measure to reflect upon the defendant's character, provided he was not in business, as contended. But in asking what kind of coupons he used, counsel might have elicited that coupons for business purposes had been issued, thus showing that the defendant was engaged in business, contrary to his contention and previous testimony. As shown above, the defendant did, in response to some of the questions, testify that he bought the gasoline "for the usual purposes that gasoline is bought for," "to use in a gasoline truck or motor or tractor—the usual things I used gasoline for." So far as appears, this might have been the only purpose of the interrogation, and it can not be said from the record that there was any improper effort to reflect upon the defendant's character. The fact that the questions and answers may incidentally have done this would not necessarily, without more, have made them objectionable. Even in a criminal case, if evidence is otherwise material and relevant to the issue on trial, it is not inadmissible merely because it may tend to establish the defendant's guilt of another and different crime. *Goodman* v. *State,* 184 *Ga.* 315 (191 S. E. 117). "If evidence is admissible for any purpose, its admission will not cause a new trial." *Purvis* v. *Atlanta Northern Ry. Co.,* 145 *Ga.* 517, 519 (89 S. E. 571). Again, the defendant had voluntarily testified, on direct examination, that while residing in California several years ago he got into trouble, pleaded guilty, and was sentenced to "14 years on 3 individual charges, [and] served 28 months at San Quentin Prison."

In view of this testimony as voluntarily given by the defendant on direct examination, the cross-examination in reference to gasoline coupons, even if tending to reflect upon his character, would hardly be cause for a new trial, whether or not in other circumstances it might have constituted reversible error. See, in this connection, *Travelers Insurance Co.* v. *Thornton,* 119 *Ga.* 455 (9) (46 S. E. 678); *Davis* v. *State,* 153 *Ga.* 669, 676 (12) (113 S. E. 11).

It follows from what has been said that there was no merit in

ground 4. Ground 5 was similar in nature, and the same ruling will apply to that ground. The evidence authorized the verdict. *Judgment affirmed. All the Justices concur.*