**WHITE et al. v. HOLDERBY et al.**

No. 13399.

United States Court of Appeals,
Fifth Circuit.

Nov. 16, 1951.

George Thomas, Valdosta, Ga., for appellants.

C. E. Hay, Thomasville, Ga., Jesse T. Edwards, Valdosta, Ga., for appellees.

Before McCORD, RUSSELL, and RIVES, Circuit Judges.

McCORD, Circuit Judge.

The complaint in this case was filed by a mother and father in their own behalf and as next friends and natural guardians of their four minor children. We shall treat the matters here to be decided in the order succinctly stated in the appellants' brief. [1]

Count one of the complaint sought the recovery of damages from the defendants upon the basis of allegations in substance

[1] "The questions presented in this appeal are simply these: 1. Did the trial court err in striking count one of plaintiff's complaint? 2. In the light of the allegations contained in count one of plaintiffs' complaint, did the court err in refusing to qualify the jury as to their affiliation with the Ku Klux Klan? 3. Did the trial court err in allowing the amendment to defendants' answer dated March 23, 1950, and is the matter contained in said amendment along with the exhibits attached thereto sufficiently prejudicial to plaintiffs' cause as to require a new trial? 4. Did the trial court err in allowing witnesses to testify as to the race and descent of plaintiffs, who were not related by blood or marriage to the plaintiffs, nor a genealogist?"

as follows: The plaintiffs had moved from Georgia to Florida in November, 1949. Theretofore the plaintiffs had resided in the Clyattville School District in Lowndes County, Georgia, and from the times they became of school age the minor children had attended the Clyattville Public School. The count alleged that by "Section 32–910 of the Georgia Code of 1933, as amended by the Acts of the General Assembly of Georgia Approved March 27, 1947, the Board of Education of Lowndes County was set up as a judicial tribunal with authority to hear and determine matters of controversy in reference to the construction and administration of school laws, and with the power and authority to summon witnesses and take testimony and compel the attendance of witnesses."

The count further alleged that the defendants presented to the Board of Education of Lowndes County, Georgia, their written complaint signed by each of the defendants in which they charged that the plaintiff mother and the four minor children were Negroes and asked the Board of Education to stop the children from attending the Clyattville Public School. Based upon said complaint a civil process was issued requiring the parents to appear and make answer at a specified time and place "at which time and place you are entitled to present witnesses and evidence, both oral and documentary." That proceeding is still pending and the hearing contemplated has never taken place. It appeared that the question of the rights of the minor children to attend the white school became moot due to their moving from Georgia into Florida.

The further averments of count one can best be quoted:

"6. That the issuance of said civil process was procured by the defendants maliciously, and without probable cause, and with the sole intent and purpose of injuring and damaging plaintiffs, holding them up to public hatred, contempt and ridicule, and with the purpose of excluding plaintiffs from society.

"7. Plaintiffs have no negro or African blood flowing through their veins, but plaintiff Dollie Seay White and the minor plaintiffs are a small part cherokee indian, and this fact was well known to the defendants at the time of the making and asserting of said false and malicious complaint.

"8. Defendants Murrel Holderby and Mrs. Lillian Holderby are members of a subversive organization known as the Ku Klux Klan and/or Southern Klan, Inc., whose object and purpose it is to promote envy, hatred, malice and discord. Plaintiffs allege, upon information and belief, that the other defendants are members of said subversive organization. All of the defendants did conspire, confederate and agree among themselves to cause the issuance of said civil process for the purposes aforesaid, and, to satisfy their individual craving and desire and in the furtherance of the objects and purpose of said subversive organization.

"9. That as a direct result of the malicious abuse of said civil process, plaintiffs have been excluded from society and held to public contempt, hatred and ridicule, and said minor plaintiffs have been forced by said exclusion, contempt and hatred, to interrupt their education, to their irreparable injury and damage, and each of the plaintiffs have been injured and damaged by the defendants in the sum of Twenty Five Thousand Dollars."

█ █ The appellants do not seriously contend that count one stated a cause of action either for malicious prosecution or for libel, but they do claim that it is good as an action for malicious abuse of process. It cannot be sustained as an action for malicious prosecution because under Georgia law, "The prosecution must be ended before the right of action accrues." Georgia Code of 1933, Section 105–806; see Brantley v. Rhodes-Haverty Furniture Co., 131 Ga. 276, 364, 62 S.E. 222. It cannot be sustained as an action for libel because the Georgia Code, Section 105–711, provides: "All charges, allegations, and averments contained in regular pleadings filed in a court of competent jurisdiction, which are pertinent and material to the relief sought, whether legally sufficient to obtain it or not, are privileged. However false and malicious, they are not libelous." See also

Wilson v. Sullivan, 81 Ga. 238, 243, 7 S.E. 274, 276; Atlanta News Pub. Co. v. Medlock, 123 Ga. 714, 51 S.E. 756, 759, 3 L.R. A.,N.S., 1139.

■ Can count one be sustained as an action for abuse of process? "The distinctive nature of an action for abuse of process, as compared with an action for malicious prosecution, is that the former lies for the improper use of process after it has been issued, not for maliciously causing process to issue." 1 Amer.Jur., p. 176, Abuse of Process, Sec. 3.

This text is quoted with approval by the Georgia Supreme Court in Davison Paxon Co. v. Walker, 174 Ga. 532, 163 S.E. 212, 214, where the earlier Georgia cases are collected.

■ Count one does not allege any improper use of the process after its issuance, but relies rather upon the charge that the defendants maliciously and without probable cause procured the issuance of said process. We hold that under the Georgia decisions it was not good as a count for abuse of process, and the trial court did not err in striking that count.

After count one was stricken, the issues left in the case were those presented by counts two and three and the answers thereto. Count two charged the defendants with slander, the nature of which sufficiently appears from the following averments: "The defendants, in accusing Dollie Seay White of being a negro, did impute to George White and Dollie Seay White a crime punishable by law, to-wit: Miscegenation, Georgia Code of 1933, section 53–106, and are guilty of slander per se. The defendants, in falsely and maliciously accusing Dollie Seay White of being a negro, did impute to the minor plaintiffs that they are the issue of an adulterous and void marriage."

The defendants in their answer denied making the representations except when privileged before the Board of Education, pleaded that all representations made by them were made in good faith, and further that in fact the representations were true.

Count three was for malicious prosecution of the parents for miscegenation, an offense prescribed by the Georgia Code of 1933, Section 53–106. The prosecution was instituted by only one of the defendants. The answer denied that this defendant procured the issuance of the warrant maliciously or without probable cause.

The verdict of the jury may have been reached upon issues of the making of the representations except when privileged, of good faith, of malice or the lack thereof, all matters not determinative of the racial status of the plaintiffs or their ancestors, and the judgment of the court should not be taken as an adjudication of the race of the plaintiffs. That was only one of the issues presented and not necessarily the issue upon which the verdict was reached.

Upon that issue of racial status, the following facts appeared in the evidence without dispute: the father was a white man; the mother was more than half white; her mother had been a white woman; her father had been at least half white. The point of dispute was whether the grandfather of the school children was part Indian or part Negro. For such an issue to arise as to the parties to this suit who are admittedly themselves free from fault in the premises is not merely regrettable, it is cruel. Nevertheless such an issue may be unavoidable where the races are required to attend separate schools, and when the issue cannot be avoided it should be settled by judicial procedure. It is a tribute to both races that instances in which the issue arises are extremely rare.

The plaintiffs' counsel requested that the jurors be asked "whether or not they are members of or have ever been members of the Ku Klux Klan." That request was based solely on the ground that the complaint charged the defendants with being members of the Ku Klux Klan. That same position is maintained in appellants' brief in this court in posing the second question for decision. See footnote 1, *ante*.

■ The trial court called attention that count one, the only part of the complaint in which that allegation was made, had

been stricken. The plaintiffs' counsel first said that he thought the allegation was contained in the second and third counts, but then when the court said that there remained no such issue in the case and that the court did not think the question a proper one, plaintiffs' counsel expressed himself as in agreement with the court and "entirely satisfied to abide by your Honor's decision." Under such circumstances, the question was not properly reserved for review on appeal.

The court sustained the plaintiffs' objections to the exhibits attached to the amendment to the defendants' answer and to many of the averments contained in that amendment, but the appellants' complaint is that the amendment and exhibits in their entirety were sent out with the jury when they retired to reach their verdict. The record does not show that this objectionable matter did in fact go out with the jury and hence, of course, we cannot say that error in that respect was committed by the trial court.

Rule 43(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., favors the reception of evidence under the most liberal rule prevailing in either the Federal or state courts. See Milwaukee Mechanics Insurance Co. v. Oliver, 5 Cir., 139 F.2d 405, 407, note 2. In this case most of the testimony on both sides was admitted without objection. Assuming, however, the questions to be properly raised, we think that the several questions as to the admissibility of evidence as to race of the plaintiffs were properly resolved by the trial court.

■ The court permitted the jury to observe the color and physical characteristics of the plaintiffs. That was done at the request and even at the urging of the plaintiffs' counsel and therefore cannot constitute reversible error. Professor Wigmore states the rule under which the court proceeded: "A physiological principle * * * tells us that the progeny of persons of one race receive from the progenitors certain corporal traits very different from the traits transmitted from a progenitor of another *race*. The presence of these peculiar traits of the race is therefore evidential to show a progenitor of the race bearing those traits. The admissibility of this evidence has never been doubted by Courts; though its use, since the abolition of slavery in this country, is now very rare, because the issues in which it is relevant can only be uncommon." 1 Wigmore on Evidence (3rd Ed.), Sec. 167; see also 4 Wigmore on Evidence (3rd Ed.), Sec. 1154; 20 Amer.Jur., p. 604, Evidence, Section 722; United States v. Hung Chang, 6 Cir., 134 F. 19, 23; Wright v. Hicks, 12 Ga. 155, 161, 56 Am.Dec. 451, 455, later appeal in 15 Ga. 160, 60 Am.Dec. 687; Bryan v. Walton, 20 Ga. 480, 500.

■ What the jury may observe for themselves as to parties before them may be testified to by witnesses as to ancestors and persons not within the view of the jury. If there are any experts in this section of the Country especially qualified to testify as to racial characteristics, they are extremely rare, and none such had had any opportunities of observation in this case. The court required each witness before expressing an opinion, to state so far as he could the facts upon which that opinion was based. We do not find that the court committed reversible error in admitting the opinions of laymen as evidence of race. 20 Amer.Jur., p. 641, Evidence, Sec. 769; 32 C.J.S., Evidence, § 455, p. 94; Wigmore on Evidence (3rd Ed.), Sec. 568; Piedmont Hospital v. Anderson, 65 Ga. App. 491, 16 S.E.2d 90; Shiver v. Tift, 143 Ga. 791, 85 S.E. 1031, 1032, L.R.A. 1918A, 622.

■ The court also admitted evidence of general reputation in the community as evidence of race-ancestry. According to the authorities such evidence was admissible. See Vol. 5, Wigmore on Evidence, Sec. 1605, p. 472, note 7; 20 Amer.Jur. p. 416, Evidence, Sec. 475; State v. Miller, 224 N.C. 228, 29 S.E.2d 751; Cole et al. v. District School Board, 32 Okl. 692, 123 P. 426.

The Supreme Court of Georgia has expressed the rule as follows: "We think there was no error in permitting the race of the defendant below to be proven by reputation. Such is the law as laid down

in the books, and the evidence is good for what it is worth. As a matter of course, it is worth hardly anything in a doubtful case." White v. Clements, 39 Ga. 232, 242.[2]

We are impressed by the patience, care, and wisdom of the trial court in its efforts to assure the parties a fair trial upon difficult and unseemly issues. We find no error in the rulings of the court, and its judgment is therefore affirmed.

2. The rule as to proof of race-ancestry is not so strict as the rule as to proof of pedigree which confines evidence of reputation to "general repute in the family". Georgia Code, Section 38–303, Lamar v. Allen, 108 Ga. 158, 33 S.E. 958, 960.