### FRANK, Adm'r, et al. v. HARJO.

No. 19203. Opinion Filed March 18, 1930.

Poe & Lundy and Stone & Moon, for plaintiffs in error.

L. E. Neff, for defendant in error.

DIFFENDAFFER, C. This is an action by Chuckaleesa Harjo in the district court of McIntosh county to recover possession of and quiet title to certain lands in McIntosh county.

The parties will be referred to as in the trial court.

Plaintiff alleges that he is a duly enrolled full-blood citizen of the Creek Nation; that Rose Stidham, a duly enrolled citizen of the Creek Nation, was, during her lifetime, allotted the land in question; that she died August 9, 1902, leaving no husband or issue, or brother or sister, or father or mother, but leaving a niece, Rina Harjo, the daughter of a deceased sister; that Rina Harjo was a full-blood Creek; that she died in 1911, a widow, leaving one child, plaintiff herein; that plaintiff thereby became the owner of said lands, and is now the owner thereof, but that defendants withhold possession thereof.

Defendants assert that the land was allotted to Rose Stidham and that she died leaving a husband, Prince Stidham, and a half-sister, Vicey Sevier, through whom defendants claim. Thus both parties claim through Rose Stidham.

A jury was waived by all parties and the cause was by agreement tried by the court.

At the trial, it was conceded that Rose Stidham, at the time of her death, left surviving her, her husband, Prince Stidham. It is also conceded that the surviving husband took one-half of the land. The contest arises over the other one-half interest in the land.

Plaintiff produced evidence tending to show that one El'en Winters was the mother of Rose Stidham; that Ellen Winters had one brother, named Kitto; Kitto had one daughter, Katie; Katie had one daughter, Rina, or Lina, who died in 1911, leaving plaintiff as her sole heir.

Defendants produced evidence tending to prove that Ellen Winters, the mother of Rose Stidham, was also known as Ellen McNac; that she had a daughter by Sam McNac, known as Vicey Sevier, and also known as Vicey McNac. That she was a half-sister of Rose Stidham; that Prince Stidham wil'ed his interest in the land to Jeanetta Berryhill. Defendants purchased from Vicey McNac and Jeanetta Berryhill.

The trial court found for plaintiff and adjudged him to be the owner of an undivided one-half interest in all the land involved, except 5 acres, the whole of which was adjudged to him. Defendants by their petition in error assign some twelve grounds, but in their brief they say:

"The questions involved in this case and in the assignments of error are largely questions of fact. The assignments of error, 1, 2, 3, 4, 7, 8, 9, and 10 will be considered under the contention of the plaintiff in error that:

"The judgment of the court is not sustained by the evidence and is against the weight and preponderance of the evidence, and there was no competent evidence to sustain the judgment."

The question thus stated is presented under two propositions:

"(a) There is no competent evidence that the plaintiff was any relative to Rose Stidham; and (b) even if there is evidence showing plaintiff's relationship to Rose Stidham, the evidence is overwhelming that Vicey Sevier was a nearer relation to Rose Stidham than was the plaintiff."

We deem it unnecessary to review the evidence at length. We think it sufficient to say there is evidence reasonably tending to support the finding of the trial court.

This is a law action and governed by the law rule. Yargee v. McMillan, 129 Okla. 48, 262 Pac. 682; Halsell v. Beartail, 107 Okla. 103, 227 Pac. 392.

In Gray v. McKnight, 75 Okla. 268, 183 Pac. 489, it was held:

"In an action for the recovery of real property tried to the court without a jury, the findings of the court upon disputed questions of fact will be given the same weight and effect as the verdict of a jury, and where reasonably supported by the evidence, will not be disturbed on appeal."

In Hand v. Hickok, 98 Okla. 125, 224 Pac. 505, it was held:

"The evidence is sufficient to sustain a judgment, if there is any evidence whatever reasonably tending to prove either directly or immediately or by permissible inference the essential facts."

Defendants claim that the evidence relied upon, though much of it was admitted without objection, was all incompetent.

It must be borne in mind that the question here involved is one of pedigree, and in such cases the rules of evidence are somewhat liberal. The allottee was born about 1851. She had been dead about 25 years. Both sides were forced to use such testimony as the nature of the case admitted.

In 10 R. C. L. p. 964, par. 140, the following rule is stated:

"A witness may testify to such facts of family history as marriage, kinship, name, and death, where his knowledge of the subject is derived from intimate acquaintance with the family."

There is testimony by several witnesses, some of whom had known the family since before the Civil War, to the death of Rose Stidham in 1902. Some of the witnesses had been intimately acquainted with the family. There was evidence that "Kitto" and Rose had lived in the same house, treated each other as uncle and niece, and had called each other such. This is in the nature of direct evidence of relationship, and as such is competent. White v. Strother, 11 Ala. 720; Hoyt v. Lightbody, 98 Minn. 189, 108 N. W. 843; 22 C. J. 250.

Defendants next complain of the rejection as evidence of a certain affidavit made by one G. W. Grayson, deceased, and purporting to be an "affidavit as to date of death of Rose Stidham," in which it was stated:

"That he was well acquainted with Rose Stidham in her lifetime; that he knew her people well; that at the time of her death she was the lawful wife of Prince Stidham; that she died August 6, 1901; that she left surviving her no children; that she never at any time give birth to any children; that at the time of her death she left surviving her as her nearest relation and sole surviving heirs at law her sister and her husband, Prince Stidham."

It is asserted that this affidavit is a part of the enrollment records. It is not identified as such. No authority is cited by defendants to support their claim of error in this regard. Nothing is stated in the affidavit showing that Grayson was in any way related to or a member of the family of Rose Stidham. We think the affidavit inadmissible.

Defendants next complain of the rejection of testimony tendered to the effect that Rose Stidham and Vicey Sevier were generally reputed in the community in which they lived to be sisters of the half-blood.

Defendants quote a portion of the rule stated in 22 C. J. 248, par. 239, as follows:

"While it has been laid down in a number of cases that general reputation in a neighborhood or vicinity is competent, much that is said in many of these cases will be found on examination to be dictum, and the better rule appears to be that the only reputation which may be shown is reputation among those who would be competent declarants."

Our attention is called to the fact that under this rule is cited Reaves v. Reaves, 15 Okla. 240, 82 Pac. 490. There the question was one of marriage. The only thing therein said bearing on evidence of general reputation was the following:

"Where a man and woman cohabit together, and the question to be decided is whether the character of her intercourse with him is matrimonial or meretricious, the declarations of the parties during such intercourse, the fact of their appearing in public with each other as man and wife, of their visiting in respectable families, and of their being treated by their acquaintances and spoken by them as sustaining that relation to each other, constitutes a part of the res gestae, showing the character of that intercourse to be matrimonial or virtuous."

As stated in the text, much that is said in many of the cases supporting the admissibility of general reputation will be found to be dictum.

Taking the rule relied upon as a whole, it clearly appears that there was no error in rejecting the evidence.

The general rule is laid down in the first part of paragraph 239, 22 C. J., supra, as follows:

"Reputation in the family gives rise to an inference of the existence of facts of family genealogy, such as age, birth, death, descent, failure of issue, identity, marriage, celibacy, or relationship; or facts incidentally connected with genealogy, such as residence, or the dates of events of family history; and evidence of such reputation will be received on an issue of pedigree concerning any member of any branch of the family."

Then follows the part of the sentence quoted by defendant, the remaining portion of which is:

"So that reputation outside of the family is inadmissible, except under unusual circumstances."

In Heaton's Estate (Cal.) 67 Pac. 321, in discussing the effect of a statute which provides:

"In conformity with the preceding provisions, evidence may be given upon a trial of the following facts: * * * 11. Common reputation existing previous to the controversy * * * and in cases of pedigree and boundary"

—it was said:

"Cases are certainly few where it has been held that pedigree may be established by common reputation in the neighborhood, and the aforesaid section of the Code never was intended to broaden the common-law rule upon this question. By that rule common

reputation was limited to the family, and reading subdivision 11 of section 1870 in conjunction with section 1852, heretofore quoted, we are satisfied that the two sections only contemplate a restatement of the common-law princip.e, viz., declarations going to establish pedigree must be the declaration of members of the family. It is the general repute—the common reputation in the family and not the common reputation in the community—that is a material element of evidence going to establish pedigree. To hold otherwise would countenance a rule which could easily be turned to the accomplishment of great wrong and injustice."

Except in rare instances, evidence of general reputation, in cases involving pedigree, is limited to reputation within the family.

The next and final proposition submitted is that the court erred in overruling the motion for new trial based on newly discovered evidence.

A motion for. new trial on account of newly discovered evidence was filed June 24, 1927, and a supplemental motion was filed on September 19, 1927. Neither of these motions was verified, and for that reason alone the latter was properly overruled. Bryan v. Ramsey, 115 Okla. 133, 242 Pac. 222; Dodson & Williams v. Parsons, 62 Ok'a. 298, 162 Pac. 1090; Howard v. Owens, 142 Okla. 82, 285 Pac. 5.

The original motion may not be strictly within the rule announced, since it is claimed to be based upon a stipulation entered into at the trial to the effect that it was agreed that there might be introduced certain recitals from Campbell's Abstract and Index, with the understanding that errors therein might be corrected, if any were discovered.

It is asserted that in said Campbell's Abstract and Index, as used in evidence, it was shown that the mother of Vicey Sevier, or Vicey McNac, was unknown. The grounds set out in the motion for a new trial were that since the trial they have discovered that the census card and enrollment records in the office of the Five Civilized Tribes show that Vicey Sevier was the daughter of Ellen McNac, nee Winters, which last-named person was the mother of Rose Stidham. By the record, the official reporter certifies that plaintiff's Exhibit A was identical with the first page of defendant's Exhibit A attached to the motion for new trial, and he makes but one copy for both exhibits. This appears to be copy of the census card of Vicey Sevier, card No. 133 of the Creek Nation. It does not show that the mother of Vicey Sevier was unknown, but shows her mother to have been Ellen McNac (then

dead) of Cussetah Town. Therefore, the record so introduced was not found to be in error, but in all things was the same as the certified copy attached to defendants' motion for new trial. What defendants sought to set up as newly discovered evidence was pay roll card No. 2115, which was made some two years prior to the census card No. 133, and could not have been a correction thereof. What was sought to be shown was a notation appearing on card No. 2115, showing that Vicey Sevier was the daughter of Sam McNac (then dead) and Ellen McNac, nee Winters (then dead) on Cussetah roll. This could have been produced at the trial by ordinary diligence.

The trial court in its statement at the close of the evidence points out clearly the reasons for its finding that Vicey Sevier and Rose Stidham were not half-sisters, and from the entire record, we conclude there is ample evidence to sustain the finding and judgment of the trial court on this point.

The judgment should be affirmed.

BENNETT, HERR, HALL, and EAGLETON, Commissioners, concur.

By the Court: It is so ordered.