Gladys Naomi WARE, an incompetent person, by Johnnie Mohon, her legal guardian, and Johnnie Mohon, as legal guardian of Gladys Naomi Ware, an incompetent person, Plaintiffs in Error,

v.

Bernard E. BEACH, Defendant in Error.

No. 36581

Supreme Court of Oklahoma.

June 25, 1957.

Rehearing Denied Feb. 18, 1958.

Application for Leave to File Second Petition for Rehearing Denied
March 11, 1958.

F. W. Files, Pawhuska, for plaintiffs in error.

Chas. R. Gray, W. N. Palmer, Paul A. Comstock, Pawhuska, for defendant in error.

WILLIAMS, Justice.

Daisy Ware Beach, Osage allottee No. 719, died on May 18, 1949. At the time of her death she was survived by her husband, Bernard Beach, to whom she had been married since August 19, 1934, an adopted son, Theodore Eugene Hazelbaker, and a maiden sister, Gladys Naomi Ware, an incompetent person. Decedent left a will dated August 20, 1946, under the provisions of which all of her property was devised and bequeathed to her incompetent sister, Gladys Naomi Ware, with the exception of $1.00 which was bequeathed to her husband, and $1.00 to her adopted son.

On April 6, 1950, the surviving husband, Bernard Beach, filed his petition for probate of said will, and at the same time filed his election to take that portion of the estate which would be his as such surviving husband under the statutes of descent and distribution of the State of Oklahoma rather than under the will. The guardian of Gladys Naomi Ware challenged the husband's right to elect to take under the law on the grounds that he was not of Indian blood and, therefore, could not inherit his wife's Osage estate under the Osage Acts of Congress. It should be here noted that the entire estate of Daisy Ware Beach, deceased, consisted of restricted lands, moneys and headrights, or mineral interests, of a total value of some $68,000.

Upon a hearing being held in the matter, the county court determined that Bernard Beach was not of Indian blood and was therefore not entitled to inherit and was not entitled to a widower's or family allowance from the estate of descent and entered a decree of distribution accordingly. Beach appealed to the district court where, after a trial de novo, judgment was rendered reversing the county court, and determining that Beach was of Indian blood and was therefore entitled to inherit and to a widower's allowance. This appeal from such judgment of the district court has been perfected by Johnnie Mohon as guardian of Gladys Naomi Ware, an incompetent person, hereinafter referred to as plaintiff in error.

As her first proposition of error, plaintiff in error contends that Bernard Beach, husband of Daisy Ware Beach, deceased, cannot succeed to any part of the estate of his wife since his purported proof of Indian blood wholly fails to meet the requirements of the Act of Congress approved September 1, 1950, 25 U.S.C.A. § 331 note.

The act of Congress of February 27, 1925 (43 Stat. 1008) dealt with restrictions with relation to lands and funds of the Osage Indians. Section 7 of such Act provided as follows:

"Hereafter none but heirs of Indian blood shall inherit from those who are of one-half or more Indian blood of the Osage Tribe of Indians any right, title, or interest to any restricted lands, moneys, or mineral interests of the Osage Tribe: Provided, That this section shall not apply to spouses under existing marriages."

This section was in effect at the time of the marriage of Daisy Ware Beach and Bernard Beach in 1934, at the time of the death of Daisy Ware Beach in 1949, and at the time Bernard Beach filed his election to take under the law rather than under the will on April 6, 1950. Such section was amended, however, on September 1, 1950, by Act of Congress of that date (64 Stat. 572), so that as amended such section now provides as follows:

"Hereafter none but heirs of Indian blood shall inherit from those who are of one-half or more Indian blood of the Osage Tribe of Indians any right, title, or interest to any restricted lands, moneys, or mineral interests of the Osage Tribe: Provided, That (except in cases where a person claiming as such heir is a party to judicial proceedings pending on the date of the enactment of this proviso in which the claimant has filed a formal pleading alleging Indian blood) no claim of heirship shall be recognized unless the claimant shall establish that he is a citizen of the United States, and is enrolled on a membership, census, or other roll prepared under the direction of the Secretary of the Interior, or has a lineal Indian ancestor so enrolled. Provided further that this section shall not apply to spouses under marriages existing on February 27, 1925."

Since Beach admittedly did not establish that he is enrolled on a membership, census, or other roll prepared under the direction of the Secretary of the Interior or has a lineal ancestor so enrolled, as required by the amendment of September 1, 1950, re-

lied upon by plaintiff in error, the question actually presented by the first proposition is whether such amendment is applicable to the instant case.

Plaintiff in error contends that the amendment of September 1, 1950, merely established a rule of evidence and that a statute which applies to procedure only is given a retrospective effect, unless it appears that the Legislature intended it should operate prospectively only; that Congress obviously intended such amendment to be retrospective in application else it would not have inserted the clause referring to pending proceedings in which a claimant had filed a formal pleading alleging Indian blood; that Bernard Beach had not filed a formal pleading alleging that he was of Indian blood at the time of the adoption of such amendment and that such amendment was therefore applicable to this case.

■ We are unable to subscribe to plaintiff in error's theory that the 1950 amendment merely prescribed an exclusive method of proving Indian blood and was therefore a rule of evidence rather than substantive law.

■ There are many persons who are undeniably of Indian blood who are not enrolled on any roll prepared under the direction of the Secretary of the Interior and who have no lineal ancestor so enrolled. On the other hand, many intermarried whites and negro freedmen were made members of the various Indian tribes and were enrolled on the tribal rolls even though not a single drop of Indian blood flowed through their veins. Obviously, then, the possession of Indian blood and the appearance of the name on the rolls above referred to are not synonymous, and the proof of one would not constitute proof of the other. Under the Act of 1925, supra, as it existed prior to the 1950 amendment, any heir of Indian blood, regardless of the quantum or source thereof, and regardless of the citizenship of such heir and whether such heir were enrolled or unenrolled, could inherit from a restricted Osage Indian. See In re Hamm's Estate, 186 Okl. 610, 99

P.2d 895. By virtue of the amendment of 1950, supra, however, only those heirs of Indian blood who are citizens of the United States and who are enrolled on a membership, census, or other roll prepared under the direction of the Secretary of the Interior or have a lineal Indian ancestor so enrolled, can inherit from a restricted Osage Indian. Such amendment simply denies non-citizen heirs of Indian blood and unenrolled heirs of Indian blood the right to inherit from an Osage Indian. Since such heirs could and did inherit prior to such amendment, the same constituted a change in the substantive law rather than mere procedure.

 It is well established in this jurisdiction that property descends upon death and vests immediately in the heirs, legatees and devisees, subject only to control of the county court for purposes of administration. 84 O.S.1951 § 212; 84 O.S.1951 § 175; Seal v. Banes, 168 Okl. 550, 35 P.2d 704; Parks v. Lefeber, 162 Okl. 265, 20 P.2d 179, 86 A.L.R. 392. Since one has a vested right in property to which he succeeds under the law of descent and distribution or under the will of a decedent immediately upon the death of the decedent, it follows that an estate must be distributed among heirs and distributees according to the law as it exists at the time of death of the decedent. 16 Am.Jur. 782 and 786, Descent and Distribution, §§ 15 and 20.

We are therefore of the opinion and hold that the right of Bernard Beach, as surviving spouse, to succeed to his statutory share of the estate of Daisy Ware Beach, deceased, vested immediately upon the death of Daisy Ware Beach in 1949, and is controlled by the substantive law pertaining thereto as it existed at that time, namely the Act of Congress of February 27, 1925, above quoted, as it existed prior to the 1950 amendment, supra. The amendment of September 1, 1950, is not applicable to this case, and the trial court did not err in so holding.

As her second proposition, plaintiff in error contends that the admission of testimony that the general reputation of A. W. Comstock was of Indian blood was erroneous and was prejudicial and that the admission of statements by A. W. Comstock to various persons stating that he was of Indian blood was erroneous and prejudicial.

 A. W. Comstock was the grandfather of Bernard Beach. Obviously, if A. W. Comstock was of Indian blood, his grandson, Bernard Beach, would likewise be of Indian blood, although of smaller quantum. A number of witnesses testified as to the general reputation in the community of A. W. Comstock as being of Indian blood. It is such testimony that plaintiff in error contends is incompetent and the rule set out in Frank v. Harjo, 142 Okl. 157, 286 P. 14, to the effect that in cases involving pedigree, the general rule is that general repute, in the family only and not the common reputation in the community, is admissible to prove pedigree, is cited in support thereof. The rule and cases cited by plaintiff in error are correct, but are not applicable here. The question here involved is, strictly speaking, race or race-ancestry rather than pedigree. The rule as to proof of race ancestry is not so strict as the rule as to proof of pedigree. Evidence as to the general reputation in the community concerning the race of a member of the community is competent. 20 Am.Jur. 416, Evidence, § 475; Cole v. District Board, 32 Okl. 692, 123 P. 426; White v. Holderby, 5 Cir., 192 F.2d 722; State v. Miller, 224 N.C. 228, 29 S.E.2d 751; Gilliland v. Board of Education, 141 N.C. 482, 54 S.E. 413; Hudgins v. Wrights, 1 Hen & M., Va., 134; Pegram v. Isbell, 2 Hen & M., Va., 193; Vaughan v. Phebe, 8 Tenn. 4, 17 Am. Dec. 770; White v. Clements, 39 Ga. 232; and annotations at 15 A.L.R.2d 1443 and Ann.Cas.1914A, 462. The court, therefore, did not err in the admission of such evidence.

Several witnesses testified that A. W. Comstock, during his lifetime, had often stated that he was of Indian blood. Plaintiff in error says the admission of such testimony was erroneous and prejudicial,

but no cases are cited in support of such position and we know of none.

■ The only authorities we have found hold that the declarations of a deceased person concerning his race are admissible. See in this connection 20 Am.Jur. 416, Evidence, § 475, and annotations at Ann.Cas.1914A, 462. We therefore find no merit in the second proposition.

■ As her third proposition, plaintiff in error contends that Bernard Beach failed to sustain the burden of proof imposed upon him by law and that upon a proper consideration and evaluation of the evidence as a whole judgment should have been for appellant. In other words, plaintiff in error contends that the trial court's finding that Beach is of Indian blood is against the clear weight of the evidence. We do not agree.

Due to the voluminous character of the evidence presented by the parties it will not be delineated in detail herein. The testimony of approximately 70 witnesses was presented, either by deposition or in person, and numerous exhibits in the nature of photographs, letters, genealogical charts, death certificates, and various and sundry other documents, were introduced in evidence and placed in the record. Some 50 or more of these witnesses testified concerning the physical characteristics and appearance of A. W. Comstock, the grandfather of Bernard Beach with particular reference to what they termed his Indian appearance. Some 37 witnesses testified that A. W. Comstock, during his lifetime, had on numerous occasions declared himself to be of Indian blood. At least 5 witnesses testified that Richard Emerson Comstock, the father of A. W. Comstock, had during his lifetime, declared that he was of Indian blood. The physical appearance of Richard Emerson Comstock, Homer Comstock (son of A. W. Comstock), and Wilmer Comstock (brother of A. W. Comstock), was detailed by a number of witnesses and several photographs were introduced. Eva Comstock, widow of A. W. Comstock, and three of their children, Cleo,

Homer and Paul, all testified that A. W. Comstock was of Indian blood, as did Bernard Beach. The tradition or reputation in the family of Indian blood going back as far as Rhoda Emerson Comstock, the mother of Richard Emerson Comstock, was established by numerous witnesses. Various and sundry other corroborative items or events, too numerous to detail here, were testified to by various witnesses. It it true that there are inconsistencies between the testimony of the various witnesses. Many of these witnesses, however, were elderly persons testifying concerning events and conversations occurring 50 or more years ago. Such inconsistencies are naturally to be expected in such testimony, and an absence thereof would reflect upon the credibility of such witnesses more than does their presence.

As above indicated, we have not undertaken to review in this opinion all of the evidence reflected by the record. We have, however, read and analyzed all of the proof with the aid of the comprehensive briefs presented by the parties. From our examination of the record we are impelled to conclude that the finding of the trial court that Bernard Beach is possessed of Indian blood is not against the clear weight of the evidence.

As her fourth proposition plaintiff in error complains of the admission in evidence of a written memorandum alleged to have been made by Leland E. Gorton prior to the taking of his deposition by the claimant. The making of the memorandum in question, and its introduction in evidence, apparently came about in the following manner. Plaintiff in error took the deposition of Leland E. Gorton in the summer of 1952. About a year later the attorneys for Bernard Beach contacted Mr. Gorton and took his deposition. After this deposition was offered in evidence, these attorneys testified that they had seen Mr. Gorton and talked with him on two occasions and that Mr. Gorton wrote down a brief statement on the first occasion and on a later occasion wrote down a second brief statement on the same sheet of paper. This sheet of

paper was offered in evidence, and the writing thereof is as follows:

"About the year 1910—Henry Downer, son of Esther Emerson was visiting my grandmother Isabella Gorton and I remember her saying there was a strain of Indian blood in his line, that my grandfathers in his line *married an Indian squaw*.

"About the year 1910 when I was 10 years old Henry Downer son of Esther Emerson Downer was visiting my grandmother, Isabella Gorton and I remember her saying that there was a strain of Indian blood in his line, that my grandfather's (Edward Gorton) grandfather *married an Indian Squaw*."

 We do not know upon what theory the above writing was admitted in evidence and we know of no theory under which it would be competent evidence or have any probative value. Mr. Gorton testified in detail concerning the subject matter of the statement and was thoroughly cross-examined thereon. It does not appear to us that the statement in question either adds to or detracts from such testimony in any way. Such being the case, the admission thereof, while error, could only be harmless error. Plaintiff in error does not suggest that she was in any way prejudiced by the admission of such statement or that the trial court relied thereon in reaching its conclusion. The admission in evidence of such statement therefore does not constitute reversible error. Travis v. McCully, 186 Okl. 378, 98 P.2d 595; Liles v. Bigpond, 190 Okl. 112, 121 P.2d 596.

As her last proposition, plaintiff in error asserts that the granting of a family allowance to Bernard Beach was wholly unwarranted both under the facts and under the law.

58 O.S.1951 § 311, provides that the surviving spouse may continue to possess and occupy the homestead and that it is not subject to administration, and also provides that certain enumerated and described property shall be delivered to the surviving spouse.

58 O.S.1951 § 312 provides that in addition to the property mentioned in section 311, supra, all property or money that is exempt by law from levy and sale on execution or other final process shall be allowed and set apart to the surviving spouse.

58 O.S.1951 § 314 provides for an additional allowance for maintenance during the settlement of the estate, and reads as follows:

"If the amount set apart as aforesaid be less than that allowed, and insufficient for the support of the surviving spouse and children, or either, or, if there be no such personal property to be set apart, and if there be other estate of the decedent, the court may in its discretion make such reasonable allowance out of the estate as shall be necessary for the maintenance of the family, according to their circumstances during the progress of the settlement of the estate, which, in case of an insolvent estate, must not be longer than one year after granting letters testamentary, or of administration."

There can be no doubt but that, under the foregoing statute, a family allowance may be paid to a surviving husband as well as to a surviving wife. Such statute as originally adopted (R.L.1910, § 6331) authorized a family allowance for the support of widow and children. We held in the case of Stuart v. Schoonover, 104 Okl. 28, 229 P. 812, that the statute as then worded did not include the husband and that a family allowance was therefore not authorized for a surviving husband. The legislature shortly thereafter, and in 1925, amended such statute to its present form, above set out, so that it now refers to surviving spouse rather than widow, and obviously includes either husband or wife.

 The power to grant a family allowance is purely and exclusively the creature of statute. The controlling statute

is above set out. There is nothing therein indicating or providing that a family allowance to a surviving husband be upon any different basis or subject to different rules than such an allowance to a surviving wife.

We have held that a widow is entitled to an allowance out of the estate of her deceased husband for her support during administration, even though she has property of her own out of which she may support herself. In re Crane's Estate, 201 Okl. 354, 206 P.2d 726, 9 A.L.R.2d 524. We have also held that the amount of allowance for support of deceased's family during administration rests largely within the discretion of the county court and of the district court when tried de novo on appeal, and unless such discretion has been abused its action will not be disturbed, and that the abuse of judicial discretion which may be corrected on appeal is a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence. In re Crane's Estate, supra. We find no such abuse of discretion in the case at bar.

Plaintiff in error suggests that a widow is always entitled to a family allowance because of the legal duty of a husband to support the wife during his lifetime, whereas a wife is only under a legal duty to support the husband when he has no community or separate property and is unable from infirmity to support himself (see 32 O.S. 1951 § 3), and that a husband should therefore be entitled to a family allowance from the deceased wife's estate only when such deceased wife was under obligation to support such husband during her lifetime. The answer to this, of course, is that there is no statute to such effect, and since the right to a family allowance is purely statutory, we would, in order to announce such a rule, have to read it into the statute. We do not think this would be warranted. In re Crane's Estate, supra.

We find no error in the judgment and order appealed from and the same are therefore affirmed.

CORN, V. C. J., and DAVISON, JACKSON and CARLILE, JJ., concur.

HALLEY, JOHNSON and BLACKBIRD, JJ., dissent.