**Navajo Nation, Plaintiff,**

v.

**Cynthia Hunter, Defendant.**

**Decided March 8, 1996**

## OPINION

Before YAZZIE, Chief Justice, AUSTIN and CADMAN, Associate Justices.

Lee R. Belone, Esq., Window Rock, Navajo Nation (Arizona), for the Defendant; and Daryl Junes, Esq., Shiprock, Navajo Nation (New Mexico), for the Plaintiff.

Opinion delivered by YAZZIE, Chief Justice.

The defendant, Cynthia Hunter, appeals her convictions of the offenses of delivery of liquor, contributing to the delinquency of a minor and endangering the welfare of a minor (two counts). Hunter contends that the Shiprock District Court should have granted her motion for acquittal because the prosecution failed to prove each element of the four criminal charges.

I

The charges arose out of an incident where a citizen saw drunken activity and also saw individuals put two cases of beer in a vehicle at Waterflow, New Mexico. Upon the citizen's report to a Navajo police officer, the officer followed the reported vehicle and saw it speeding and weaving in and out of traffic. The officer stopped the vehicle within the territorial jurisdiction of the Navajo Nation. Upon inspecting the vehicle, the officer saw packages of liquor and seized forty-seven cans of beer. Upon a proper inquiry about the identity of the passengers, the officer discovered that two were male minors who were 15 and 16 years of age. They were visibly intoxicated.

The district court found culpability in Hunter's role in obtaining the liquor, giving it to the minors, importing it into the Navajo Nation and permitting the minors to participate in the criminal offenses of possession, delivery and consumption of liquor.

Hunter contends that at trial, she made a motion for acquittal on the ground that the Navajo Nation failed to prove, beyond a reasonable doubt, that she was a "person" within the meaning of the criminal law.

*194*

The issue is who has the burden of proof to show that a defendant is or is not an "Indian" for purposes of jurisdiction. We will also address the method of proof to be used and the scope of the term "Indian" for purposes of criminal jurisdiction.

## II

The delivery of liquor statute, 17 N.T.C. § 411(a), makes it an offense for "a person" to deliver liquor, including beer. The contributing to the delinquency of a minor statute, 17 N.T.C. § 313 (a), prohibits "a person" from contributing to the delinquency of a minor by helping a child commit an offense. The endangering the welfare of a minor law makes it a crime for "a person" to fail to maintain reasonable care and treatment of a minor. The transcript of proceedings confirms the trial court's findings of guilty beyond a reasonable doubt under those statutes, but the question is who must prove an individual is a "person" (and an Indian) under those statutes.

The definition of "person" in the Criminal Code "includes any natural Indian individual...." 17 N.T.C. § 208(17). Navajo law does not require affirmative proof of the terms "person" or "Indian" as an element of any crime. The statute which addresses criminal culpability, 17 N.T.C. § 211, provides only as follows: "A person shall not be guilty of an offense unless he acted intentionally, knowingly, recklessly, or negligently as the law may require with respect to each *material* element of the offense." (emphasis added). That section does not require the prosecution to prove personal status as a material element, and the exclusion of it as a condition of culpability evidences the Navajo Nation Council's intent that such is not required. This section is read with 17 N.T.C. § 206, which requires that each element of the offense must be proved beyond a reasonable doubt. That means each and every *material* element of the statute which constitutes the offense. In other words, the prosecution need only prove the conduct which is prohibited by the statute (along with the required mental state), as material elements.

This analysis is reinforced further by the territoriality statute, 17 N.T.C. § 203. It provides that the Navajo Nation courts have jurisdiction over "any person" who commits an offense "if the *conduct constituting any element of the offense*" occurs within the territorial jurisdiction of the Navajo Nation. (emphasis added).

Hunter cites Rule 29(g) of the Navajo Rules of Criminal Procedure (1990), which permits the defendant to challenge the jurisdiction of the court at any time. The Criminal Procedure Rules must be read to implement the purposes of the Criminal Code. They are a gloss upon its provisions to carry out the intent that criminal law "shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." N.R.Cr.P. 2(b). The rules give a defendant an opportunity to challenge the court's jurisdiction at any time, but place the burden of proof upon the defendant to show a lack of jurisdiction. The burden was on Hunter to show, by a preponderance of the

evidence, that she was not an "Indian" for purposes of 17 N.T.C. § 208(17).[1]

### A

It is unreasonable to require the Navajo Nation to prove that an individual is an "Indian" because that information is in the hands of the defendant or more readily obtained by the defendant. It is difficult or impossible for the prosecution to ascertain someone's ancestry or to survey the defendant's community to find its perceptions of his or her personal status. We construe the definition of "person" as being an "Indian" to mean the following:

> Recognizing the possible diversity of definitions of 'Indian-hood,' we may nevertheless find some practical value in a definition of 'Indian' as a person meeting two qualifications: (a) that some of his ancestors lived in America before its discovery by the white race, and (b) that the individual is considered an 'Indian' by the community in which he lives.

Felix S. Cohen, *Handbook of Federal Indian Law* 2 (University of New Mexico Ed., n.d.).[2] We add to the definition that if a non-Navajo individual assumes tribal relations with Navajos or the Navajo Nation in our territorial jurisdiction, as discussed below, that person is deemed to be an Indian for purposes of jurisdiction.

### B

The prosecution may not be able to question a defendant about ancestry due to the privilege against self-incrimination. We do not decide that issue here. The privilege is not jeopardized by the burden we place upon defendants in this case. Rule 26 of the Navajo Rules of Evidence (1978) provides several methods of proof of "Indian-hood" where the availability of the declarant is immaterial. The rule addresses the situation where the declarant cannot be the defendant, if he or she invokes the privilege against self-incrimination. The methods of proof include records of regularly conducted activity (No. 6), absence of entry in records of regularly conducted activity (No. 7), public records and reports (No. 8), absence of public record or entry (No. 10),[3] records of religious organizations (No. 11), marriage, baptismal and similar certificates (No. 12), family records (No. 13), and reputation on personal or family history (No. 19).

The last exception, reputation on personal or family history, is also known as pedigree evidence. Where a question of whether a person is an "Indian" arises, testimony about a person's ancestry can be used. In *Hudgins v. Wrights*, 1

---

1. We note that the judgments in this case have what purports to be the defendant's Navajo census number. We choose to put aside the prosecution's argument that the district court took judicial notice of that fact, but note that Navajo Nation law enforcement officers have the authority to obtain a census number from a defendant for purposes of reasonable identification.

2. This is a republication of Cohen's original work and not the 1982 revised edition.

3. That is, absence of entries in public records which state the person as an "Indian."

Henning & Munford's Rpts. 133 (Va. 1806), the court permitted individuals to testify about their percentage of Indian blood, color and features and the fact they were descendants of a free Indian woman, to obtain freedom from slavery.[4] In *State v. Rackich*, 119 P. 843 (Wash. 1911), involving the crime of illegal sale of liquor to an Indian, the prosecution was permitted to put on testimony that the person to whom the liquor was sold was one-half Portuguese and one-half Indian. In *United States v. Mid-Continent Petroleum Corp.*, 67 F.2d 37 (10th Cir. 1933), the issue was whether parties to an intestate probate of an allotment could testify about their parentage to establish they were "Indian" heirs. The court ruled that "[e]vidence of declarations, tradition, and reputation is admissible to provide facts as to genealogy or pedigree." *Id.* at 45. In *Ware v. Beach*, 322 P.2d 635 (Okla. 1957), where a husband elected against his wife's will and his ability to inherit was challenged on the ground he was not an "Indian," the court said, "The question here involved is, strictly speaking, race or race-ancesty rather than pedigree. The rule as to proof of race ancestry is not so strict as the rule as to proof of pedigree. Evidence as to the general reputation in the community concerning the race of a member of the community is competent." *Id.* at 639.[5] Finally, in *Matter of R.M.B.*, 689 P.2d 281 (Mont. 1984), an Indian Child Welfare Act case, the Montana Supreme Court upheld use of statements by out-of-court declarants under the Montana Rules of Evidence to determine if a child was an "Indian child" within the meaning of that Act.

We approve the use of proof of ancestry and community reputation as an "Indian" under the Criminal Code. We hold that the defendant has the burden, by a preponderance of the evidence, to prove he or she is not an "Indian" for purposes of challenging the jurisdiction of the court.

### III

One of the duties of this Court is to guard the sovereignty of the Navajo Nation. There is a false assumption that Indian nations absolutely lack criminal jurisdiction over non-Indians. *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191 (1978), which purportedly stripped Indian nations of their criminal jurisdiction over non-Indians, provides exceptions to the rule of non-jurisdiction. The United States Supreme Court elaborated on them in *Duro v. Reina*, 495 U.S. 676 (1990). Under both *Oliphant* and *Duro*, using the Court's citations to *United States v. Rogers*, 4 How. 567 (1846), and *Nofire v. United States*, 164 U.S. 657 (1897), and the precedents used to decide those cases, an individual who "assumes tribal rela-

---

4. One of Thomas Jefferson's legal specialities as a lawyer was freeing Indians from slavery, and although he was President of the United States when this decision was rendered, he personally participated in it by providing authoritative copies of applicable statutes. Dumbauld, A Manuscript from Monticello: Jefferson's Library in Legal History, 38 *American Bar Assn. Journal* 389 (1952).

5. The Oklahoma court was not as precise as it should be. "Indian-hood," in Cohen's words, is not a racial but a political classification. However, the principles of relaxed proof of community reputation also apply to the political status of being an Indian.

tions" is fully subject to the laws of the Indian nation with which that person assumes such relations.

While the Navajo Nation specifically rejects adoption of non-Navajos under 1 N.T.C. § 502 as an element of assuming tribal relations, we interpret criminal statutes in light of Navajo common law. *Navajo Nation v. Platero*, 6 Nav. R. 422 (1991). There are various ways an individual may "assume tribal relations" as a matter of Navajo common law: by entry within the Navajo Nation with the consent of the Nation pursuant to Article II of the Treaty of 1868;[6] by marriage or cohabitation with a Navajo; or other consensual acts of affiliation with the Navajo Nation.[7]

We hold, that where a criminal defendant has assumed tribal relations with the Navajo Nation, such defendant will be considered an "Indian" and thus a "person" for purposes of 17 N.T.C. § 208(17). In matters of public safety and responsibility for personal conduct, a defendant's personal relations within the Navajo Nation is material.

While the Navajo Nation is now plagued with the imported evils of family violence, child abuse, gang activity and other social ills, the Government of the United States has done little to help cure the social diseases it helped inflict upon Navajos. Navajos were forced into a cycle of dependence upon the United States. The Navajo Nation Council must fully implement the provisions of our great Treaty with the United States of America, and the Attorney General of the United States should support our stand to assert criminal jurisdiction over non-Indians. The Navajo Nation cannot allow victims of crime to go unprotected from the law, because the Navajo people live under the rule of law; not the rule of lawlessness, as is seemingly declared by the United States Supreme Court in its myopic Indian jurisdiction decisions.

The Shiprock District Court judgments are AFFIRMED.

---

6. Where the "reservation" of lands in the treaty is defined and the United States agreed that no person could ever "pass over, settle upon, or reside in" the Navajo Nation without its permission.

7. Given that efforts are underway to revise the Navajo Nation Criminal Code, the drafters should maximize use of treaty-entry limitations, border control, and specific consent to jurisdiction by entry onto the Navajo Nation.